COMMONWEALTH *vs.* KEVIN WOOD. No. 93-P-900. August 31, 1994. *Evidence*, Relevancy and materiality, Bias. *Practice, Criminal*, Argument by prosecutor, Instructions to jury. *Judge. Jury and Jurors. Homicide.*

On July 7, 1991, during a fight with the defendant, George Aulson was stabbed to death. Charged with first degree murder and with malicious destruction of property,[1] the defendant at trial maintained that he had acted in self-defense and that the Aulsons (George, his wife, his brother, and his brother's girlfriend) had initiated the fight because they suspected the defendant had informed the police that George and his wife were cultivating marihuana. Convicted of second degree murder and of malicious destruction of property, the defendant claims numerous errors. We affirm his convictions.

1. *Evidentiary matters.* On the day prior to the incident, the police executed a search warrant of the victim's residence. The defendant claims that it was error not to permit him to show the extent of what the search uncovered because the quantity of marihuana plants found bore on the seriousness of the Aulsons' grudge. An examination of the record shows that the question of bias was "sufficiently aired," see *Commonwealth v. Hicks*, 377 Mass. 1, 8 (1979), *Commonwealth v. Piedra*, 20 Mass. App. Ct. 155, 156 (1985), and that the judge could also, in his discretion, determine that the danger of unfair prejudice in setting forth the fruits of the search outweighed their probative value. *Commonwealth v. Domaingue*, 397 Mass. 693, 699 (1986).

The defendant was permitted to show through an officer in the narcotics division of the Peabody police department that he had provided the officer with information regarding alleged criminal activity by Aulson at the latter's residence, that thereafter the police officer and other members of the Peabody police department had conducted an investigation, including surveillance, of the activities at Aulson's residence, that on July 6, approximately twelve hours before the stabbing, they had executed a search warrant at the victim's residence, and that they were there for several hours and seized evidence "which was, to some degree, consistent" with the defendant's allegations. Another witness testified that, at the hospital, Aulson's wife screamed, "George, you can't die. You have the best marihuana plants in Peabody." Both in his opening and his closing defense counsel argued from the evidence that the Aulsons had a grudge because they

---

[1]There was evidence at trial that the defendant had smashed Aulson's car with an axe handle.

thought the defendant had been an informant against them concerning their narcotics activities.

For similar reasons, although it would have been preferable to allow the full testimony, see *Commonwealth* v. *Henson*, 394 Mass. 584, 587 (1985), the judge acted within his discretion in determining that the bias of Aulson's brother's girlfriend was sufficiently shown by evidence that she had threatened a witness who testified to the girlfriend's reputation for untruthfulness. Precluding the defendant from bringing out the exact wording of the threat was not error.

The defendant wanted to question the victim's wife to show that, several months after the victim's death, marihuana trafficking charges against her were reduced to marihuana possession and the charges were continued without a finding. Unlike the witness in *Commonwealth* v. *Connor*, 392 Mass. 838, 841 (1984), the victim's widow had no pending charges against her at the time of trial. Even if it was error to exclude such questioning, a matter we do not decide, we consider the error, if any, harmless beyond a reasonable doubt. There was overwhelming evidence that the victim's wife was distraught at the hospital where her dying husband was brought. She testified that she saw the defendant attack her family's van with an axe handle, saw him with a knife fighting with her husband, and saw her husband "thrashing, gurgling, 'Help me. I'm drowning. I love you.' He just, he just, he just was a mess." In view of her anger at the defendant and her obvious motive to convict him, any evidence of bias against him because of past leniency toward her by the prosecution paled by comparison and could not have affected the verdict.

There was no error in excluding evidence that the victim's wife, his brother, and his brother's girlfriend had a history of drug abuse, see *Commonwealth* v. *Adrey*, 376 Mass. 747, 752 (1978),[2] or in excluding evidence of G. L. c. 209A orders between the victim's brother and his girlfriend, who lived in the trailer next to the one occupied by the defendant and his girlfriend. Evidence of the animosity between the defendant and the victim's brother was adduced, and the judge could properly consider "violent acts" directed against persons other than the defendant as too remote. See *Commonwealth* v. *Doherty*, 23 Mass. App. Ct. 633, 637 (1987).

2. *Judge's statement concerning police.* In his opening statement, defense counsel repeatedly stated that the Peabody police did not properly investigate the homicide case because of ineptitude and favoritism toward a Commonwealth witness, the victim's brother's girlfriend. After counsel had finished, the judge informed the jury that while they could determine whether the animus or bad feelings against the defendant on the part of George Aulson were relevant to the charges, "the effectiveness of the

---

[2]The defendant argued that such evidence was relevant to his contention that the victim's brother, his girlfriend, and the victim acted in concert to retaliate for the seizure of their source of drugs and that the defendant, therefore, had reason to fear for his safety.

Peabody police department is not at issue, and I will ask you to bear those distinctions in mind." There was no objection by defense counsel at the time, and the Commonwealth proceeded with its case. The next day, counsel asked for curative instructions to the effect that if the police failed to follow procedures, etc., "then they might infer that this supports the defendant's position of contrivance on the part of the Commonwealth witnesses which the Peabody police chose not to investigate." The request was denied.[3] Although the judge's remark should not have been made, see *Commonwealth* v. *Bowden*, 379 Mass. 472, 486 (1980); *Commonwealth* v. *Gilmore*, 399 Mass. 741, 745-746 (1987), in view of the weakness of the evidence of ineffectiveness of the police — which defense counsel extensively explored by examination of the victim's brother's girlfriend and police officers — that evidence could not, in our view, have created a reasonable doubt as to the defendant's guilt in the minds of the jurors.

3. *Discharge of ill juror.* The trial judge was told by the chief court officer that one of the deliberating jurors was ill and needed some fresh air. With the permission of both counsel, the juror was taken for a walk by a court officer. As explained by the judge at a bench conference, the following events occurred. After both counsel left for lunch, a court officer came to the judge and said that the juror would not be able to resume. The judge suggested that she would be replaced at two o'clock. The court officer stated that the juror could not wait until two o'clock to be excused, and the judge discharged the juror on the basis of what the court officer had reported. The judge also stated, "The fact is she was reported to me to having not taken her hypertension pill and was experiencing distress. It sounded, and I don't think the word was used, but it sounded acute. . . . I didn't feel it necessary or myself qualified to evaluate the juror's condition."

As pointed out by the trial judge in his memorandum denying the defendant's motion for a new trial, there were alternative procedures which could, and probably should, have been followed. The judge listed some possibilities: "[t]he juror could have been asked if she could await the two o'clock return of counsel; a physician to examine her could have been sought; the juror could have been inquired of by the court, without counsel but on the record; the jury could have recessed for the day in the hope that the sick juror could return well on April 30, and so on." The judge, however, at the time clearly considered it to be an emergency situation. See G. L. c. 234A, § 39. After the juror was excused, and subsequent to the bench conference, the judge held a lobby conference at which the court officer was examined under oath and confirmed the facts set forth by the judge. See *Commonwealth* v. *Haywood*, 377 Mass. 755, 767 n.13 (1979).

---

[3]The curative instructions sought by counsel went far beyond eliminating the effect of the judge's previous statement. Cf. *Commonwealth* v. *Phong Thu Ly*, 19 Mass. App. Ct. 901, 902 (1984).

While, at the very least, the judge should have attempted to inquire of the juror directly, we think there was here sufficient evidence of a true emergency and hence a legitimate basis for the juror's discharge. Accordingly, no prejudice has been shown. See G. L. c. 234A, § 74. Cf. *Commonwealth v. Olszewski*, 416 Mass. 707, 721-722 (1993), but see *id.* at 722 n.15. Contrast *Commonwealth* v. *Perez*, 30 Mass. App. Ct. 934, 935 (1991), where "[t]here [was] nothing in [the] record beyond the judge's statement that a juror was 'sick' which show[ed] the relevant circumstances" of the discharge.

4. *Miscellaneous.* The remaining claims of the defendant are without merit. His challenge to the prosecutor's closing argument, namely, that the prosecutor used substantively evidence that was not admitted for its truth, is made for the first time on appeal. The thrust of the prosecutor's argument was the timing of the defendant's telephone call, that is, to show it was made after the stabbing, rather than to show the contents of the call. In any event, there was here no substantial risk of a miscarriage of justice.

Contrary to the defendant's contention, it is highly doubtful that the judge used the standard of *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), in refusing to reduce the verdict to manslaughter. The *Latimore* reference was to what the jury could find. In any event the judge made his view of the verdict clear, saying, "I have no doubt that the verdict is a proper one fairly arrived at." There was no abuse of discretion in failing to reduce the verdict to manslaughter.

*Judgments affirmed.*

*Charles K. Stephenson* (*Raymond D. Buso* with him) for the defendant.
*Lila Heideman*, Special Assistant District Attorney, for the Commonwealth.