# United States Court of Appeals
## For the First Circuit

No. 03-2139

JOSE LINCOLN RODRIGUEZ,

Petitioner, Appellant,

v.

LUIS SPENCER,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Patti B. Saris, U.S. District Judge]

Before

Selya, Lynch, and Lipez, Circuit Judges.

Matthew V. Soares for appellant.
Susanne G. Reardon, Assistant Attorney General, with whom
Thomas F. Reilly, Attorney General, was on brief, for appellee.

June 15, 2005

**LYNCH**, **Circuit Judge**.  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for a state prisoner's filing of a federal habeas corpus petition.  28 U.S.C. § 2244(d)(1).  That limitations period is tolled, however, while "a properly filed application for State post-conviction <u>or</u> <u>other</u> <u>collateral</u> <u>review</u> with respect to the pertinent judgment or claim is pending."  <u>Id.</u> § 2244(d)(2) (emphasis added).

This case requires us to consider the question of whether an application to the Massachusetts Supreme Judicial Court (SJC) for extraordinary relief under Mass. Gen. Laws ch. 211, § 3 may constitute "a properly filed application for . . . other collateral review with respect to the pertinent judgment or claim."  The Commonwealth defends primarily on the ground that a petition for ch. 211, § 3 review can never be "an application for . . . other collateral review."  There is an implicit second argument that this particular petition was not such an application for collateral review within the meaning of 28 U.S.C. § 2244(d)(2), particularly in the aftermath of a quite recent Supreme Court opinion, <u>Pace</u> v. <u>DiGuglielmo</u>, 125 S. Ct. 1807 (2005).  We disagree with the Commonwealth's first argument but agree with its second.  We affirm the dismissal of the federal habeas petition brought by Jose Lincoln Rodriguez because it was untimely and not saved by the tolling provision of 28 U.S.C. § 2244(d)(2).

## I.

On July 20, 1977, Rodriguez was convicted of forcible rape and of assault and battery with a dangerous weapon of a twenty-one year old student at a local university. Rodriguez "grabbed the victim . . . , jabbed a broken bottle into her neck, put his jacket over her face, and raped her in the backyard of a nearby house." Commonwealth v. Rodriguez, 737 N.E.2d 910, 912 (Mass. App. Ct. 2000). After entry of the verdicts, the trial judge postponed sentencing and, sua sponte, ordered the petitioner committed to the treatment center at Bridgewater State Hospital for a determination of sexual dangerousness pursuant to Mass. Gen. Laws ch. 123A, § 4. At a later Superior Court hearing, Rodriguez was determined to be sexually dangerous and committed to the treatment center for an indeterminate period of from one day to life, pursuant to Mass. Gen. Laws ch. 123A, § 5. This order of commitment was reviewed by the SJC, which affirmed the order, contingent on the affirmance of the criminal convictions. Commonwealth v. Rodriguez, 382 N.E.2d 725, 734 & n.20 (Mass. 1978).

On December 22, 1978, the Massachusetts Appeals Court reversed the petitioner's convictions in Commonwealth v. Rodriguez, 383 N.E.2d 851, 857 (Mass. App. Ct. 1978). The SJC granted the parties' application for leave to obtain further appellate review (ALOFAR), affirmed the Appeals Court's reversal of the petitioner's

convictions in Commonwealth v. Rodriguez, 391 N.E.2d 889, 897 (Mass. 1979), and ordered a new trial.

Released on bail, Rodriguez did not appear on the date set for his new trial. Seven years later, Rodriguez was found in California and returned to Massachusetts, where a jury convicted him once again of rape and assault and battery with a dangerous weapon on December 23, 1987. He was sentenced to life with the possibility of parole.

On November 3, 2000, the Massachusetts Appeals Court affirmed the petitioner's convictions from his second trial, and, in turn, affirmed the denials of his subsequent motions for new trial and for post-conviction dismissal. Commonwealth v. Rodriguez, 737 N.E.2d 910, 920 (Mass. App. Ct. 2000). On January 3, 2001, the SJC denied petitioner's ALOFAR in Commonwealth v. Rodriguez, 742 N.E.2d 81 (Mass. 2001).[1]

On May 8, 2001, the petitioner filed a petition for general superintendence of inferior courts pursuant to ch. 211, § 3 with a single justice of the Supreme Judicial Court for Suffolk County. A later amendment to this petition is not relevant. That justice denied the petition on February 14, 2002. Rodriguez filed

---

[1] If Rodriguez had promptly filed a federal habeas claim after the SJC's denial of his petition to seek further appellate review of the Appeals Court's affirmance of the denial of his new trial motion, there would be no question about the timeliness of his Fourth and Sixth Amendment claims raised in his federal habeas petition.

-4-

a notice of appeal from this denial on February 20, 2002, but moved to dismiss the appeal on September 10, 2002.

On January 31, 2003, Rodriguez filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent filed a motion to dismiss the petition as time-barred pursuant to 28 U.S.C. § 2244(d)(1). The district court dismissed the petition as time-barred on April 29, 2003. That dismissal did not consider the effect of Rodriguez' ch. 211, § 3 petition; indeed, Rodriguez did not argue the issue to the court. Rodriguez moved for reconsideration which the district court denied.

On August 1, 2003, the petitioner filed a motion for Certificate of Appealability which the district court denied on February 3, 2004. On September 17, 2004, this court allowed a Certificate of Appealability, raising sua sponte the issue of whether the petition filed under ch. 211, § 3 had a tolling effect under 28 U.S.C. § 2244(d)(2).

## II.

We review de novo the denial of a habeas application on procedural grounds. Voravongsa v. Wall, 349 F.3d 1, 3-4 (1st Cir. 2003). We set the context.

Rodriguez' federal habeas petition raises several constitutional arguments: (1) the introduction of illegally seized evidence at his trial violated the Fourth, Sixth, and Fourteenth Amendments; (2) the in-court identification procedure used to

identify him as the assailant violated the Sixth and Fourteenth Amendments; (3) the absence of counsel at his pretrial identification violated the Sixth Amendment; and (4) his counsel was ineffective also in violation of the Sixth Amendment.

By contrast, his claim to the SJC in the ch. 211, § 3 petition was not that he had been denied those federal constitutional rights, but that one member of a three-justice panel of the state appeals court which affirmed his conviction was involved in a conflict of interest with the prosecutor who tried his case. The relief Rodriguez sought in the ch. 211, § 3 petition was not, directly, the vacating of the judgment of guilt, but further appellate review of his conviction by the SJC or review by another appeals court panel.[2] He also asserted he had just learned of the supposed conflict and no other remedy was available because a motion for a new trial would do him no good as to the Appeals Court's

---

[2]     One might ask why, if the ch. 211, § 3 petition did not raise the same claims as Rodriguez' habeas claims, his state petition addressed to another claim should extend the time for his habeas claims. The answer is that the habeas statute refers to both "judgments" and to "claims." See 28 U.S.C. § 2244(d)(2) (the time is tolled while a properly filed application for collateral review is pending "with respect to the pertinent judgment or claim"). While we have not decided the issue, Nowaczyk v. Warden, N.H. State Prison, 299 F.3d 69, 74-75 (1st Cir. 2002) (leaving the question open), most courts have considered that a post-conviction attack on an underlying criminal judgment (even if it raises a different claim) is sufficient to toll the limitations period. See, e.g., Carter v. Litscher, 275 F.3d 663, 664-65 (7th Cir. 2001); Tillema v. Long, 253 F.3d 494, 502 (9th Cir. 2001).

decision, and his time for seeking rehearing in the Appeals Court had long since expired.

The single justice of the SJC held that Rodriguez was not entitled to relief under ch. 211, § 3 because he had other procedures he could have used and that regardless, Rodriguez did not challenge the other two justices of the Appeals Court panel and so the panel affirmance would stand in any event.

A.  Ch. 211, § 3 Petitions as Applications for "State Post-Conviction Relief or Other Collateral Review"

We turn to the Commonwealth's first ground -- its contention that a ch. 211, § 3 petition can never be an application for other collateral review.[3]  Massachusetts law is our starting point.  See Carey v. Saffold, 536 U.S. 214, 223 (2002) ("[F]or purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions."); Voravongsa, 349 F.3d at 4.

Massachusetts General Laws ch. 211, § 3 reads:

Superintendence of inferior courts; power to issue writs and process.

The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and

---

[3]    The Supreme Court has recognized that the phrase "other collateral review" is not restricted to state criminal convictions: it may apply to situations in which a person is in custody other than pursuant to a state conviction.  See Duncan v. Walker, 533 U.S. 167, 176 (2001).  That issue need not concern us.

-7-

processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws.

In addition to the foregoing, the justices of the supreme judicial court shall also have general superintendence of the administration of all courts of inferior jurisdiction, including, without limitation, the prompt hearing and disposition of matters pending therein . . . and it may issue such writs, summonses and other processes and such orders, directions and rules as may be necessary or desirable for the furtherance of justice, the regular execution of the laws, the improvement of the administration of such courts, and the securing of their proper and efficient administration . . . .

Mass. Gen. Laws ch. 211, § 3.

This route to collateral review of a conviction is not the ordinary one. The normal post-conviction remedy provided by Massachusetts to a convicted criminal defendant seeking further review is a direct appeal; or, once the conviction becomes final after appeal, an individual can file a motion for a new trial under Mass. R. Crim. P. 30. Rule 30 "provide[s] remedies for persons who have been imprisoned in violation of State and Federal law and also enable[s] Judges to give discretionary relief where justice may not have been done." 30A Kent B. Smith, Massachusetts Practice § 2052 (1983). There are no time limitations for filing a Rule 30 motion, and an individual can file multiple Rule 30 motions. See Mass. R. Crim. P. 30. The SJC has held that a Rule 30 motion is the "exclusive vehicle for postconviction relief" in Massachusetts.

-8-

Leaster v. Commonwealth, 432 N.E.2d 708, 709 (Mass. 1982). We accept that. Whether it is the exclusive vehicle for "other collateral review" is a different matter. See Duncan v. Walker, 533 U.S. 167, 177 (2001).

By contrast with Rule 30, "[a] part[y] seeking review under ch. 211, § 3, must demonstrate both a substantial claim of violation of [his or her] substantive rights and error that cannot be remedied under the ordinary review process." Planned Parenthood League of Mass., Inc. v. Operation Rescue, 550 N.E.2d 1361, 1365 (Mass. 1990) (internal citations and quotation marks omitted). Although ch. 211, § 3 is a civil statute, the SJC has exercised its superintendence power in criminal cases as well. But the SJC has cautioned that relief under ch. 211, § 3 in such circumstances is "extraordinary." Diggs v. Commonwealth, 788 N.E.2d 544, 545 (Mass. 2003). A ch. 211, § 3 petition is not to be used as "a substitute for normal appellate review," Tavares v. Commonwealth, 823 N.E.2d 374, 375 (Mass. 2005), and relief is not ordinarily available when the petitioning party has or had "adequate and effective avenues other than [ch. 211, § 3], by which to seek and obtain the requested relief." Jaynes v. Commonwealth, 768 N.E.2d 1053, 1054 (Mass. 2002) (internal quotation marks and citations omitted); Lykus v. Commonwealth, 732 N.E.2d 897, 899 (Mass. 2000) (denying relief under ch. 211, § 3 when the defendant had another available remedy).

Our difficulty with the Commonwealth's absolutist position that a ch. 211, § 3 petition may never be a petition for other collateral review within the meaning of 28 U.S.C. § 2244(d)(2) is that the Commonwealth itself has decided to leave room for such discretionary collateral relief. Despite its language, the SJC has in fact both reviewed the merits and granted relief (albeit rarely) in ch. 211, § 3 petitions even when another remedy was available. While we agree that ch. 211, § 3 is not the normal means for either post-conviction relief or collateral review, under the AEDPA tolling provision, Congress has deferred to the states, and Massachusetts has chosen to permit collateral review in some circumstances under ch. 211, § 3. As the Supreme Court has held in Duncan, "Congress may have refrained from exclusive reliance on the term 'post-conviction' so as to leave no doubt that the tolling provision applies to all types of state collateral review available after a conviction and not just to those denominated 'post-conviction' in the parlance of a particular jurisdiction." Duncan, 533 U.S. at 176.

The ch. 211, § 3 procedure operates to provide a vehicle for attacks on convictions and sentences. See Aldoupolis v. Commonwealth, 435 N.E.2d 330 (Mass. 1982) (vacating revocation of suspension of sentence). It is also a vehicle for interlocutory review and relief in a criminal proceeding. See Barry v. Commonwealth, 455 N.E.2d 437 (Mass. 1983) (considering motion to

-10-

dismiss on speedy trial grounds); Gilday v. Commonwealth, 274 N.E.2d 589 (Mass. 1971) (vacating pretrial order that defendants disclose certain defenses without deciding whether the ch. 211, § 3 petition was proper).

There are other situations in which the SJC has exercised its ch. 211, § 3 jurisdiction post-judgment in criminal cases where the defendant's federal constitutional rights were at issue. An example is Commonwealth v. Lowder, 731 N.E.2d 510 (Mass. 2000), where the Commonwealth appealed from entry of a judgment of acquittal following opening statements. The SJC took jurisdiction under ch. 211, § 3 and concluded double jeopardy would preclude retrial. The obverse of this was addressed by this court in Gonzalez v. Justices of the Municipal Court of Boston, 382 F.3d 1 (1st Cir. 2004), vacated by 115 S. Ct. 1640 for reconsideration in light of Smith v. Massachusetts, 125 S. Ct. 1129 (2005). There, the SJC, exercising ch. 211, § 3 jurisdiction, determined that double jeopardy did not bar retrial after entry of judgment of acquittal; a federal habeas petition ensued. And in Jackson v. Coalter, 337 F.3d 74 (1st Cir. 2003), this court again addressed on habeas a double jeopardy claim where the SJC had exercised its ch. 211, § 3 power to review and reject the defendant's double jeopardy claim.

The unacceptability of the Commonwealth's absolutist position is thus highlighted. In some instances it will be the very outcome of the ch. 211, § 3 petition which gives rise to the habeas

petition. In some cases, the SJC will address and reject in such petitions the claims to be raised on federal habeas or that otherwise attack the judgment of conviction. The allowance of a ch. 211, § 3 petition may well moot the potential habeas claims by granting the relief which would otherwise be sought. It is evident that in many cases, the purposes of the federal tolling provisions would be served by recognizing ch. 211, § 3 petitions. The Court in Duncan described the federal tolling provision as ensuring that state courts have the opportunity to fully explore potential federal law challenges before the federal courts entertain a collateral attack and as ensuring the finality of state court judgments. Duncan, 533 U.S. at 179-80. The federal habeas system has no interest in undercutting the resolution of issues in the state system, even if that resolution comes by way of extraordinary relief.[4] Thus we reject the Commonwealth's position that categorically a ch. 211, § 3 petition cannot be "an application for . . . other collateral review."

---

[4] The question of whether a petition is required for exhaustion of claims under 28 U.S.C. § 2254(c) is distinct from whether an application for collateral review tolls AEDPA's limitations period. See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) ("Although the language [requiring exhaustion in 28 U.S.C. § 2254(c)] could be read to effectively foreclose habeas review by requiring a state prisoner to invoke any possible avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion. . . . Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims." (emphasis in original)). There should be no suggestion that a Massachusetts state prisoner must file a ch. 211, § 3 petition in order to exhaust his state remedies.

**B.  Rodriguez' Ch. 211, § 3 Petition as An Application for Other Collateral Review.**

We have determined that the ch. 211, § 3 label on a petition collaterally attacking a state judgment does not alone disqualify a petition as being within the scope of 28 U.S.C. § 2244(d)(2).  That is because the SJC's extraordinary relief has been invoked in a variety of circumstances.  The harder question is whether this particular petition satisfies the criteria of being an application for collateral review of the state court judgment within the meaning of the federal tolling statute, 28 U.S.C. § 2244(d)(2).[5]

Not every filing by a criminal defendant meant to advance his challenge to a judgment of conviction amounts to an application for other collateral review of the judgment or claim.  Some fact patterns easily demonstrate this.  A pro se motion for appointment of state post-conviction counsel is not such an application.  Voravongsa, 349 F.3d at 7.  Nor is a motion to revive an appeal.

---

[5]  The Commonwealth alleges when a single justice denies a ch. 211, § 3 petition due to the existence of an alternative adequate remedy, the decision should be read as saying there was no "jurisdiction" over the petition.  Relying on Pace, the Commonwealth argues that when there was no state court jurisdiction over the state application, the application cannot be "properly filed" for federal tolling purposes.  See Pace, 125 S. Ct. at 1812.  Rodriguez' petition, therefore, is not "properly filed".

The Commonwealth raises an interesting argument but one we do not reach.  The premise for the Commonwealth's argument is not firm.  As we have explained, the SJC has in fact taken jurisdiction under ch. 211, § 3 when other remedial avenues were available.  And often it is not clear whether the SJC is saying there is no jurisdiction.  Thus we reject the Commonwealth's position that categorically a ch. 211, § 3 petition denied due to an alternative, adequate remedy can never be "properly filed."

-13-

Adeline v. Stinson, 206 F.3d 249, 252 (2d Cir. 2000). Nor is an application before a state sentence review panel. Bridges v. Johnson, 284 F.3d 1201 (11th Cir. 2002).

Our question on the facts of this case is harder. We have already said we will not take the absolutist position that a ch. 211, § 3 petition can never be an application for collateral review.

In analyzing this case, we are guided by the Supreme Court's recent decision in Pace, 125 S. Ct. at 1812-14. Pace held that where a state court, after judicial consideration, ultimately determines that a post-conviction filing is untimely, the filing is not a "properly filed application" for purposes of 28 U.S.C. § 2244(d)(2), despite the clerk's acceptance of the filing. Id. at 1814. Pace signals that the state court's reasoning in disposing of the filing may be considered by the federal courts in determining whether the application was "properly filed" for purposes of tolling. Id. at 1812-13 ("conditions to filing" can include conditions that require state judicial consideration). Pace requires us to look beyond the mechanical exercise of filing and engage in case-by-case scrutiny of the state court's disposition of that state filing to determine whether AEDPA's tolling provision applies.

By analogy, we conclude that the state court's reasoning in the disposition of the ch. 211, § 3 petition in this case is also relevant to determining whether the petition qualifies as an

-14-

application for collateral review of the pertinent judgment. We stress that the scope of this opinion deals only with ch. 211, § 3 petitions, and not with the usual state mechanisms for post-conviction and collateral review.

We turn to consider the single justice's rationale in denying Rodriguez' ch. 211, § 3 petition. Here, the single justice's decision held both that Rodriguez had failed to take the opportunities available earlier to him to assert his claim of bias and that, in any event, any relief would not affect his criminal judgment of conviction since a majority of the Appeals Court panel had affirmed his conviction.

The single justice's second ground conclusively tilts the balance and leads to a conclusion that Rodriguez' application was not an application for collateral review of the pertinent judgment, Rodriguez' state criminal conviction, within the meaning of 28 U.S.C. § 2244(d)(2).

We understand the single justice's holding as follows. Rodriguez' petition did not qualify for exercise of ch. 211, § 3 power not merely because other remedies were available earlier, but also because as a matter of state law the purported bias of one of three appellate justices would not affect the integrity of the Massachusetts Appeals Court judgment affirming his criminal conviction. In disposing of Rodriguez' ch. 211, § 3 petition, the single justice held that even if the allegations of conflict by one

justice were true, the relief requested was, as a matter of Massachusetts law, irrelevant to the validity of the judgment of conviction, which would stand on a two-to-nothing vote. It therefore cannot reasonably be said that Rodriguez' ch. 211, § 3 petition is an application for collateral review of the judgment.

Federal courts sitting in habeas must accept state court rulings on state law issues. An inquiry into the correctness of a ruling on state law issues "is no part of a federal court's habeas review of a state conviction." Estelle v. McGuire, 502 U.S. 62, 67 (1991). We see no reason why the same rule does not apply to the interpretation of the tolling statute in determining whether a particular application seeks collateral review of the pertinent judgment. Indeed, Pace itself strongly implies that we follow such a rule. As in Pace, when a state court determines under state law that the ch. 211, § 3 petition is not an application for collateral review of the judgment, then "'that [is] the end of the matter' for purposes of [28 U.S.C.] § 2244(d)(2)." Pace, 125 S. Ct. at 1812 (quoting Saffold, 536 U.S. at 226).

It would be contrary to the express language of 28 U.S.C. § 2244(d)(2) to permit this particular petition to toll the federal limitations period that had since run on petitioner's habeas claims. We need not decide now under what other circumstance such ch. 211, § 3 petitions will also fail to qualify as federal tolling mechanisms.

We **affirm** the dismissal of the petition.