# United States Court of Appeals

## For the First Circuit

No. 06-2591

KEVIN WOOD,

Petitioner, Appellant,

v.

LUIS S. SPENCER, SUPERINTENDENT,
M.C.I.-NORFOLK,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

[Hon. Leo T. Sorokin, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Selya and Tashima,* Senior Circuit Judges.

Leslie W. O'Brien for appellant.
Eva M. Badway, Assistant Attorney General, Commonwealth of
Massachusetts, with whom Martha Coakley, Attorney General, was on
brief, for appellee.

May 15, 2007

_____

*Of the Ninth Circuit, sitting by designation.

**SELYA**, **Senior Circuit Judge**. This is a case of first impression for this court. In it, a state prisoner challenges the dismissal of his federal habeas petition as untimely. This challenge rests on the proposition that the district court misconstrued and misapplied two limitations-extending provisions contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See 28 U.S.C. §§ 2244(d)(1)(B), 2244(d)(1)(D).

We have not previously had the occasion to analyze those provisions. We do so here and conclude that the petitioner has failed to show either (i) that he exercised due diligence to discover the statement that he claims was wrongfully withheld or (ii) that this alleged discovery violation comprised an impediment that prevented him from learning about, and acting upon, the statement at an earlier date. Consequently, we affirm the dismissal of the habeas petition as time-barred.

## I. BACKGROUND

In July of 1991, an Essex County grand jury charged the petitioner, Kevin Wood, with the murder of George Aulson and the commission of related crimes. The charges arose from an altercation that occurred between the two men late at night on July 7, 1991, in Peabody, Massachusetts. While Wood acknowledged stabbing Aulson, he insisted that Aulson had instigated the brawl and that the killing was an act of self-defense. Pertinently, the police had raided Aulson's home on the day before the stabbing, and Wood

-2-

claimed that Aulson bore him ill will because he (Aulson) believed that Wood had informed the authorities that Aulson was cultivating marijuana on his property.

The case was tried in the state superior court. The jury rejected Wood's claim of self-defense and found him guilty of second-degree murder and malicious destruction of property. See Mass. Gen. Laws ch. 265, § 1; id. ch. 266, § 127. The trial justice sentenced Wood to life in prison.

Following his conviction, Wood moved unsuccessfully for a new trial. His appeal to the Massachusetts Appeals Court (MAC) proved equally fruitless. Commonwealth v. Wood, 638 N.E.2d 1372 (Mass. App. Ct. 1994). That was the end of the line in state court: the Massachusetts Supreme Judicial Court (SJC) rejected Wood's application for leave to seek further appellate review in November of 1994.

After serving several years in a Massachusetts state prison, Wood obtained new counsel. In the course of an investigation that began in May of 2001, she interviewed Lt. Richard Bettencourt of the Peabody police. During that interview, Wood's counsel learned that Bettencourt had spoken with Aulson on the evening of the fatal encounter — after the raid but before the stabbing — and that Aulson had said, "I'll get the son of a bitch who set me up." Counsel also learned that Bettencourt, who was not

-3-

involved in the homicide probe, had passed this comment along to the investigating officers.

In October of 2001, Wood's counsel moved in the superior court for a new trial. She based that motion on (i) the prosecution's alleged failure to disclose the Bettencourt conversation and (ii) an alleged flaw in the jury instructions. With respect to the first claim, she pointed out that although Wood's trial counsel had made a discovery request for any statements or other materials that might tend to support a finding that Aulson was the initial aggressor, the prosecution never furnished the defense with information anent the Bettencourt/Aulson conversation.

The state court judge gave the motion short shrift. The MAC affirmed the denial of that motion. Commonwealth v. Wood, 818 N.E.2d 641 (Mass. App. Ct. 2004) (Table). On April 27, 2005, the SJC again denied leave to seek further appellate review.

Roughly five and one-half months later — on October 5, 2005 — Wood filed a habeas petition in the federal district court. See 28 U.S.C. § 2254. He named as the respondent the superintendent of the penitentiary (M.C.I.-Norfolk) in which he was incarcerated. Because the superintendent is sued in his official capacity, we henceforth refer to the respondent as "the Commonwealth."

In federal court, Wood pressed the same two arguments that he had advanced in his most recent round of state court initiatives: that his rights had been violated through the prosecution's

nondisclosure of the Bettencourt conversation, see Brady v. Maryland, 373 U.S. 83, 87 (1963), and that the jury instructions had improperly assigned him the burden of proving manslaughter (as an alternative to murder), see Mullaney v. Wilbur, 421 U.S. 684, 704 (1975).  The district judge, concurring with the recommendation of a magistrate judge, held — without convening an evidentiary hearing — that the habeas petition was untimely.[1]

The district court's reasoning was straightforward. First, it noted that the AEDPA, save only in select circumstances, prohibits inmates incarcerated pursuant to state court convictions from seeking federal habeas relief more than one year after the conclusion of direct review in the state system.  See 28 U.S.C. § 2244(d)(1)(A).  The court then explained that, while certain newly discovered evidence may bring a case within an exception to the one-year limitations period, that exception is only available to habeas petitioners who have pursued relevant evidentiary leads with due diligence.  See id. § 2244(d)(1)(D).  Because Wood (or, at least, his counsel) appeared to have had knowledge of the existence of Bettencourt's conversation with Aulson at the time of trial, this exception did not apply.  For the same reason, the court held the exception for state-created impediments, see id. § 2244(d)(1)(B), to be inapplicable.

---

[1]For simplicity's sake, we do not distinguish further between the district judge and the magistrate judge but, rather, take an institutional view and refer only to "the district court."

This timely appeal ensued. The district court issued a broadly worded certificate of appealability, see id. § 2253(c), covering the general question of whether the petition was time-barred. Where, as here, the district court has denied a habeas petition on a procedural ground without taking evidence, we afford de novo review. See Rodriguez v. Spencer, 412 F.3d 29, 32 (1st Cir. 2005). That standard applies with full force to the district court's due diligence holding.

## II.  ANALYSIS

Wood's appeal focuses exclusively on his Brady claim; his jury instruction claim is not before us. We begin our discussion of the Brady claim by outlining the AEDPA's temporal limitations as they apply to federal habeas petitions filed on behalf of state prisoners.

Under section 2244(d)(1)(A), a state prisoner must file for federal habeas relief within a one-year period that runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Because Congress did not enact the AEDPA until the mid-1990s, courts have read into its text a grace period for state prisoners who completed their odyssey through direct review prior to April 24, 1996 (the AEDPA's effective date). Those persons are allowed to use that date, rather than a date referable to direct review, as the starting point for accrual of the one-year

limitations period. See Carey v. Saffold, 536 U.S. 214, 217 (2002); Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999).

Wood qualifies for this grace period. Even so, his window for filing a federal habeas petition would seem to have closed on April 24, 1997. That was well before he brought a federal habeas proceeding.

In establishing the AEDPA limitations period, however, Congress left room for some play in the joints. One such exception, applicable in cases of certain newly discovered evidence, postpones the commencement of the limitations period until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). A second exception provides that if an impediment to the filing of a habeas petition has been "created by State action in violation of the Constitution or laws of the United States . . . [and] if the applicant was prevented from filing by such State action," the limitations period will not begin to run until the date on which the impediment is removed. Id. § 2244(d)(1)(B).

These two exceptions — there is another, which is not germane to this case — form the centerpiece of Wood's appeal. Because the limitations period, once started, is tolled for any period during which a convict is seeking state court relief with respect to the pertinent claim, see id. § 2244(d)(2), Wood's federal habeas petition is timely if either exception operated to forestall

the start of the limitations period to the date on which his new counsel interviewed Bettencourt.

Wood frames his argument in the alternative. At the outset, he posits that the conversation between Bettencourt and Aulson was a factual predicate to the nascent Brady claim that undergirds his federal habeas petition — a factual predicate that could not readily have been discovered absent disclosure by the Commonwealth. Alternatively, he asseverates that the prosecution's failure to disclose this (exculpatory) conversation constituted a state-created impediment that prevented him from learning about the evidence and, thus, from pursuing the claim until the interview took place in 2001. In either event, he insists that the AEDPA clock should be calibrated to the interview date. We address these arguments sequentially.

## A.  **Factual Predicate**.

We need not linger long over Wood's assertion that the Bettencourt conversation was a factual predicate to his Brady claim and, thus, within the ambit of section 2244(d)(1)(D). In order to qualify for this exception, a habeas petitioner must show that, exercising due diligence, he could not have learned of the evidence in question at a substantially earlier date. The district court found that Wood could not meet this criterion. We agree.

Under ordinary circumstances — and there is no room for the application of a different principle here — a lawyer's knowledge

-8-

is attributed to her client. See, e.g., United States v. Desir, 273 F.3d 39, 44 (1st Cir. 2001). At the original criminal trial in this case, the Commonwealth called Aulson's wife as a witness. While cross-examining her, Wood's trial counsel posed a series of questions concerning the Aulsons' activities on the night of the slaying. When the witness recounted that the couple had gone to a particular restaurant that evening, the attorney asked: "[While at the restaurant] didn't [Aulson] go up to Officer Bettencourt of the Peabody police and ask some questions of Officer Bettencourt?" The witness replied that she had neither seen nor overheard this exchange but acknowledged that it might have occurred. The questioning then proceeded to other matters.

The district court found that this line of inquiry, which was initiated by Wood's counsel and which Wood does not claim was prompted by either the prosecutor's direct examination or any of Mrs. Aulson's responses, demonstrated beyond hope of contradiction that Wood's counsel knew (or, at least, had reason to believe) that a conversation had taken place between Bettencourt and Aulson on the night of the murder. This finding is unassailable.

The conclusion is inescapable, therefore, that Wood, through his attorney, had notice in 1992 that such a conversation had transpired. Given that knowledge, due diligence demanded that he attempt to interview Bettencourt about the conversation at that time. See Daniels v. Uchtman, 421 F.3d 490, 492 (7th Cir. 2005).

-9-

In turn, the failure to exercise that diligence bars access to the limitations-extending benefits of section 2244(d)(1)(D).

Wood attempts to parry this thrust by arguing, in effect, that his trial counsel was obviously in the dark. Since self-defense was the main issue at trial, this thesis runs, no tactical rationale could explain the lawyer's failure to approach Bettencourt. From this, Wood urges us to conclude that his counsel, though aware that a conversation occurred, was not aware either of its substance or of its possible import.

This argument is wide of the mark. The test of due diligence under section 2244(d)(1)(D) is objective, not subjective. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2001). Thus, we are concerned less with what Wood's counsel believed and more with what knowledge fairly may be imputed to him. See id. The lawyer plainly was aware that some exchange had taken place between the decedent and a local law enforcement officer on the same evening that the fatal incident occurred. It was objectively unreasonable not to pursue that lead (indeed, the fact that the lawyer chose to inquire into the contents of the conversation when cross-examining a potentially hostile witness is a solid indication that he realized its potential relevance). That Mrs. Aulson could neither confirm nor deny the occurrence of the conversation did not relieve Wood, through his attorney, of the responsibility to take reasonable measures to explore this area of inquiry.

-10-

That ends this aspect of the matter. Despite his knowledge that a conversation had occurred, the record is devoid of any suggestion that Wood's counsel expended the slightest effort — let alone due diligence — to try to interview Bettencourt or otherwise to ferret out the nature of Bettencourt's exchange with the decedent. That inaction is incompatible with a finding of due diligence. Hence, Wood cannot avail himself of the exception limned in section 2244(d)(1)(D). See Daniels, 421 F.3d at 492 (concluding that when the facts pertinent to a petitioner's Brady claim could in the exercise of due diligence have been discovered at an earlier date, that date marks the commencement of the AEDPA limitations period); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) (finding section 2244(d)(1)(D) inapplicable when the crucial interview would, in the exercise of due diligence, have been conducted years earlier).

## B. **State-Created Impediment**.

Wood's more plausible argument is that the alleged Brady violation constituted a state-created impediment that prevented him from mounting his federal habeas petition until his new lawyer independently discovered Aulson's statement to Bettencourt. See 28 U.S.C. § 2244(d)(1)(B). He contends that the withholding of this (exculpatory) evidence comprised state action in violation of the Constitution and that the resultant unavailability of Bettencourt's account prevented him from advancing a viable federal habeas claim.

-11-

He adds that since section 2244(d)(1)(B) is focused on government conduct, he should be entitled to avail himself of its prophylaxis regardless of whether his trial counsel should have uncovered the Bettencourt conversation.

The Commonwealth counters that section 2244(d)(1)(B) does not apply to <u>Brady</u> claims. In its view, this provision is designed to extend the limitations period for cases in which a state directly interferes with a prisoner's ability to file a habeas petition by, say, denying him access to legal materials. <u>See</u> <u>Shannon</u> v. <u>Newland</u>, 410 F.3d 1083, 1087 (9th Cir. 2005) (noting that the overwhelming majority of section 2244(d)(1)(B) cases are of this genre).

That "direct interference" argument cannot easily be dismissed. Still, the word "impediment" is not defined in the statute itself, nor is it self-elucidating. <u>See</u> <u>Moore</u> v. <u>Battaglia</u>, 476 F.3d 504, 506-07 (7th Cir. 2007). Moreover, two of our sister circuits have entertained the possibility that section 2244(d)(1)(B) might encompass <u>Brady</u> violations. <u>See</u> <u>Williams</u> v. <u>Sims</u>, 390 F.3d 958, 960 (7th Cir. 2004); <u>Green</u> v. <u>Cain</u>, 2001 WL 502806, at *1 (5th Cir. 2001) (per curiam) (unpublished). Here, however, we need not resolve this vexing question because we conclude that, even if section 2244(d)(1)(B) does encompass <u>Brady</u> violations — a matter on which we take no view — Wood is not entitled to relief. We explain briefly.

Wood's most obvious problem involves whether his lack of due diligence — an established fact here, see supra Part II(A) — is dispositive of his state-created impediment inquiry. The statute itself, 28 U.S.C. § 2244(d)(1)(B), focuses on government conduct and does not contain an explicit diligence requirement. The Tenth Circuit nonetheless has implied, in fairly strong terms, that section 2244(d)(1)(B) does have a diligence requirement. See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). The Ninth Circuit, albeit without much analysis, has implied the same. See Roy v. Lampert, 465 F.3d 964, 972 & n.3 (9th Cir. 2006) (regarding a section 2244(d)(1)(B) argument as "identical" to an equitable tolling argument and discussing at length the need for petitioners seeking equitable tolling to demonstrate due diligence).

The petitioner resists this implication. In exhorting us to refrain from imputing a diligence requirement into section 2244(d)(1)(B), he reminds us that courts normally presume that "Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." BFP v. Resolution Trust Corp., 511 U.S. 531, 537 (1994). As he sees it, the inclusion of an express diligence requirement in section 2244(d)(1)(D) is tantamount to an intentional exclusion of such a requirement in section 2244(d)(1)(B). On this basis, Wood urges us, in applying the latter exception, to disregard his lack

of diligence and look only to the Commonwealth's obstructive conduct.

But this case does not require us to decide the full extent to which a due diligence requirement should be read into the warp and woof of section 2244(d)(1)(B) — a question that we leave for another day — because it is perfectly plain that, here, the petitioner had the power to blunt the effect of any state-created impediment. In a nutshell, that impediment did not "prevent" him from the timely filing of an application for habeas relief.

In reaching this conclusion, a different canon of statutory construction lights our path. It is common ground that "[a]ll words and provisions of statutes are intended to have meaning and are to be given effect." United States v. Ven-Fuel, Inc., 758 F.2d 741, 751 (1st Cir. 1985); accord Libby v. Magnusson, 177 F.3d 43, 48 (1st Cir. 1999). This means, of course, that we must eschew any construction of section 2244(d)(1)(B) that would render a word or phrase therein superfluous. Ven-Fuel, 758 F.2d at 751-52. Wood's state-centric reading of section 2244(d)(1)(B) falls within that proscription; it fails to give meaning to the second clause of the statutory provision. That clause demands that a state-created impediment must, to animate the limitations-extending exception, "prevent" a prisoner from filing for federal habeas relief. See Lloyd v. Van Natta, 296 F.3d 630, 633 (7th Cir. 2002) (emphasizing this "plain language"). That gets the grease from the goose. The

-14-

verb "prevent," in common parlance, means to frustrate, hold back, or keep from happening. See, e.g., Merriam-Webster's Collegiate Dictionary 984 (11th ed. 2003) (defining "prevent" as "to deprive of power or hope of acting or succeeding" or more simply as "to keep from happening"). The question, then, is whether Wood was "prevented" from filing a federal habeas petition by reason of some unconstitutional state action (here, the alleged Brady violation).

In answering that question, Wood's available alternatives are of considerable relevance. After all, were someone to erect a barrier across a highway, it would be impossible to decide whether the barrier "prevented" a motorist from proceeding to his destination without credible information as to the width of the highway, the size of the barrier, and the dimensions of the vehicle. If the barrier left ample room for the vehicle to pass, it could not fairly be said to "prevent" the motorist's access to his destination.

So it is here. There is no reliable way to measure the obstructive effect of the alleged Brady violation without knowing what other means of access to the same information were within Wood's ken and available to him. Just as a person who has the ability to drive around a barrier hardly can blame his delayed arrival at his destination on the presence of the impediment, so too the person who has notice that information exists and ready access

-15-

to it hardly can blame his inaction on the state's failure to deliver the information to him.

This case is a paradigmatic example of the point. Wood, with the exercise of garden-variety diligence, could have learned the content of the Bettencourt conversation and, thus, obliterated the adverse effects of the Commonwealth's nondisclosure. Given this circumstance, we cannot say that the state-created impediment "prevented" Wood, in any meaningful sense, from filing for federal habeas relief. Consequently, Wood may not avail himself of the limitations-extending benefits of section 2244(d)(1)(B).

Let us be perfectly clear. We do not hold that section 2244(d)(1)(B) contains a hidden diligence requirement or that, in terms of diligence, section 2244(d)(1)(D) is coterminous with the "prevent" language of section 2244(d)(1)(B). We hold only that, on the facts of this case, the Commonwealth's conduct cannot fairly be said to have been the obstacle that prevented Wood from filing for federal habeas relief.

## III. CONCLUSION

We need go no further. The district court correctly concluded that the petitioner, had he exercised due diligence, would have had access to the information that he maintains he needed in order to bring the claims asserted in his federal habeas petition in a timely fashion. Moreover, it was his counsel's failure adequately to pursue an available investigative lead, not government

-16-

resistance, that prevented him from taking action earlier.  Given this scenario, the time for filing a federal habeas petition expired some eight years before Wood repaired to the federal court.

**Affirmed**.