# United States Court of Appeals
## For the First Circuit

No. 20-1471

DENNIS SENA,

Petitioner, Appellant,

v.

STEVEN KENNEWAY, Superintendent, MCI-Shirley,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]
[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Elizabeth Prevett, with whom Jonathan Scott Lauer was on
brief, for appellant.
Gabriel Thornton, Assistant Attorney General, with whom Maura
Healey, Attorney General of Massachusetts, was on brief, for
appellee.

May 12, 2021

**SELYA**, <u>Circuit Judge</u>. Federal habeas review for state prisoners is subject to a one-year limitations period, which generally runs either from the conclusion of direct review or the expiration of the time allotted for seeking direct review. <u>See</u> 28 U.S.C. § 2244(d)(1)(A). The Supreme Court has recognized, though, that this one-year period sometimes may not provide a sufficient interval for the exhaustion of a state prisoner's claims in state court. <u>See</u> <u>Rhines</u> v. <u>Weber</u>, 544 U.S. 269, 275 (2005). To guard against injustice, the Court has approved a procedure — commonly known as a motion for a stay and abeyance — through which a state prisoner may file his federal habeas petition and seek additional time, subject to certain preconditions, to exhaust his state remedies. <u>See</u> <u>id.</u> at 277-78. One such precondition requires the petitioner to show good cause for his failure to have exhausted a particular claim or claims in state court. <u>See</u> <u>id.</u> at 277.

In this case, the district court, rejecting a magistrate judge's recommendation, held that petitioner-appellant Dennis Sena, a state prisoner, had not satisfied the good cause requirement.[1] The court proceeded to deny the petitioner's motion for a stay in abeyance and dismissed his habeas petition. <u>See</u> <u>Sena</u> v. <u>Kenneway</u>, No. 19-10254, 2020 WL 1429849, at *2-3 (D. Mass.

---

[1] The petitioner's name is spelled in the record both as "Sena" and "Senna". Like the district court, we employ throughout the spelling used by the petitioner in his habeas petition.

- 2 -

Mar. 24, 2020). The petitioner appeals. Concluding, as we do, that the district court acted within the wide margins of its discretion, we affirm.

**I. BACKGROUND**

We sketch the relevant facts and travel of the case. Our tale begins at a convenience store in Boston, Massachusetts, where a brawl erupted in the early hours of May 19, 2012. One participant, Zachary Fritz-Kill, sustained knife wounds, and an individual who attempted to intervene was rewarded by having his tires slashed.

When the police arrived at the scene, at least one eyewitness identified the petitioner as the knife-wielding perpetrator. Fritz-Kill, who had consumed a heady mix of drugs and alcohol in the hours preceding the brawl, was taken to a nearby hospital. Although Fritz-Kill had previously been diagnosed as having a bipolar disorder, he attributed his erratic behavior at the convenience store to his use of cocaine.

The petitioner was subsequently indicted by a Massachusetts grand jury, which charged him with assault and battery with a dangerous weapon, see Mass. Gen. Laws ch. 265, § 15A(b); assault and battery with a dangerous weapon, causing serious bodily injury, see id. ch. 265, § 15A(c)(i); and malicious destruction of property, see id. ch. 266, § 127. All three counts were coupled with a charge that the petitioner was an "habitual

criminal," having been convicted and sentenced to terms of immurement of more than three years on at least two earlier occasions.[2]  Id. ch. 279, § 25(a).  The "habitual criminal" designation paved the way for the imposition of statutory maximum sentences should the petitioner be convicted of the felonies charged in the indictment.  See id.

Maintaining his innocence, the petitioner proceeded to trial in Suffolk County Superior Court in March of 2015.  The Commonwealth relied on witness and victim testimony (including the testimony of Fritz-Kill, who identified the petitioner as his attacker).  The defense tried to discredit Fritz-Kill's testimony by emphasizing how mind-altering substances may have affected his recollection.  But when the defense attempted to introduce expert testimony to this effect, the trial court rejected the proffer — which it variously characterized as conjectural, irrelevant, and untimely.

The first trial proved indecisive:  the jury deadlocked, and the trial court declared a mistrial.  A second trial ensued, and the trial court (in the person of the same trial justice) again excluded the petitioner's proffered expert testimony.  The second

---

[2] Sena had previously been convicted of armed assault with intent to murder, see Mass. Gen. Laws ch. 265, § 18(b); possession of a dangerous weapon, see id. ch. 269 § 10(b); distribution of cocaine, see id. ch. 94C, § 32A(a); armed assault with an intent to rob, see id. ch. 265, § 18(b); and possession of a firearm without a license, see id. ch. 269, § 10(a).

jury acquitted the petitioner on the property-destruction count but found him guilty on the other two counts. The petitioner waived his right to have a jury adjudicate his "habitual criminal" status; the trial court found the designation apt; and the court sentenced the petitioner to the statutory maximum for each offense of conviction — ten years for assault and battery with a dangerous weapon and fifteen years for assault and battery with a dangerous weapon, causing serious bodily injury — to run concurrently.

The petitioner appealed to the Massachusetts Appeals Court (the MAC) on diverse grounds. As relevant here, he maintained that the trial court abused its discretion in excluding his proffered expert witness. In formulating this claim, though, the petitioner's appellate counsel challenged only the trial court's determination that the testimony was not relevant. No challenge was advanced as to the concurrent finding that the proffer was untimely, notwithstanding that the trial court had cited timeliness as a separate (and independently sufficient) ground for its exclusion of the evidence.

The MAC treated this omission as "essentially conced[ing] that the evidence was not timely" and deemed the claim waived. Commonwealth v. Senna, 2017 WL 4856593, at *2 (Mass. App. Ct. 2017) (unpublished table decision). The Supreme Judicial Court (the SJC) denied the petitioner's application for leave to seek further appellate review (ALOFAR) on December 21, 2017, see

Commonwealth v. Senna, 94 N.E.3d 853 (Mass. 2017) (table decision), thus leaving the MAC decision as the final state-court decision.

Undaunted by the SJC's denial of his ALOFAR, the petitioner requested that the Massachusetts public defender agency, the Committee for Public Counsel Services (CPCS), provide him with new counsel to file a motion for a new trial under Rule 30 of the Massachusetts Rules of Criminal Procedure.[3] This rule authorizes the granting of a new trial to persons confined in derogation of either federal or state law, see Rodriguez v. Spencer, 412 F.3d 29, 33-34 (1st Cir. 2005), and represents the "exclusive vehicle for postconviction relief" in the Massachusetts state courts after direct review has been exhausted, id. at 34 (quoting Leaster v. Commonwealth, 432 N.E.2d 708, 709 (Mass. 1982)).  CPCS declined the petitioner's request and notified him on June 18, 2018, that he would have to proceed pro se.  The agency apparently based this decision on input from the petitioner's erstwhile appellate counsel, who advised it that a Rule 30 motion was not warranted because she already had raised the expert testimony issue on direct appeal.  She failed to mention, however, that incomplete argumentation — the failure to challenge the

---

[3] The record does not contain the exact date that the petitioner first contacted CPCS but we assume, favorably to him, that he made his request for the appointment of counsel soon after his ALOFAR was denied.

timeliness of the proffer — led the MAC to dismiss the claim as waived.

The petitioner responded by filing a complaint against his former appellate counsel with the Massachusetts Board of Bar Overseers (the Board). At the same time, he beseeched CPCS to reconsider. On February 6, 2019, CPCS yielded to the petitioner's importunings and assigned him state post-conviction counsel. His new lawyer determined that the petitioner could raise potentially meritorious issues in a Rule 30 motion, including a claim that his former appellate counsel rendered ineffective assistance by causing the unintentional forfeiture of a potentially viable ground for appeal (the trial court's exclusion of the proffered expert testimony).

Two days after the appointment of his new state post-conviction counsel, the petitioner, acting pro se, filed a habeas petition in the United States District Court for the District of Massachusetts. See 28 U.S.C. § 2254. This petition, submitted approximately six weeks before the expiration of the one-year federal limitations period, named the superintendent of the correctional institution in which the petitioner was incarcerated as the respondent and asserted eight distinct grounds for relief. Simultaneous with this submission, the petitioner moved to stay the habeas petition and hold it in abeyance. This request stemmed from what the petitioner deemed to be the "mixed" nature of his

- 7 -

petition, which in his view included both exhausted and unexhausted claims (his ineffective assistance of appellate counsel claim being among the latter).[4]  See Neverson v. Bissonnette, 261 F.3d 120, 123 (1st Cir. 2001) (citing Rose v. Lundy, 455 U.S. 509, 522 (1982)).

We pause at this juncture to put the significance of the "mixed" nature of the petition into perspective.  Federal law incorporates the doctrine that a federal habeas court will entertain a state prisoner's petition for habeas relief "only after all state remedies available [for the claim] have been exhausted."  Ex parte Hawk, 321 U.S. 114, 117 (1944) (per curiam).  Although Congress codified this doctrine in 1948, see Act of June 25, 1948, ch. 646, § 1, 62 Stat. 869, 967 (current version at 28 U.S.C. § 2254(b)-(c)), it remained uncertain whether a federal habeas court could adjudicate petitions that contained a mix of both exhausted and unexhausted claims.  The Supreme Court resolved this uncertainty in Lundy.  See 455 U.S. at 522.  The Lundy Court construed the exhaustion principle as "[r]equiring [the] dismissal" of mixed petitions.  Id. at 519.

Withal, the Court did not demand that federal habeas courts dismiss such mixed filings wholesale.  As an alternative,

---

[4]  The Commonwealth disputes the characterization of the petition as "mixed," suggesting that none of the petitioner's claims have been exhausted.  We assume, as did the district court, that the petition contained both exhausted and unexhausted claims.

- 8 -

a district court could allow the petitioner to withdraw unexhausted claims.  See id. at 520.  Those petitioners who opted for dismissal (without prejudice) could later "come back to federal court to present their perfected petitions with relative ease."  Rhines, 544 U.S. at 274.  This structure, though, became problematic with the advent of new legislation.  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) codified the strict exhaustion requirement articulated in Lundy, see 28 U.S.C. § 2254(b)(1)(A), and added a one-year statute of limitations for federal habeas petitions, see 28 U.S.C. § 2244(d)(1)(A).

The interplay between the exhaustion requirement and this newly enacted limitations period created a potential catch-22:  habeas petitioners whose "timely but mixed petition[s]" were dismissed by federal courts for want of exhaustion might, depending on the timing of the dismissal, find themselves without adequate time to exhaust their state-court remedies and still return within the limitations period to federal court.  Rhines, 544 U.S. at 275.  Necessity is said to be the mother of invention, see Plato, The Republic of Plato 369C (Benjamin Jowett trans., Project Gutenberg 2017) (1894), and federal courts soon devised a way to alleviate the harsh effects of this catch-22.  They began to stay mixed habeas petitions and to hold them in abeyance in lieu of dismissal.  See, e.g., Gaskins v. Duval, 336 F. Supp. 2d 66, 68 (D. Mass. 2004); Kilburn v. Maloney, 164 F. Supp. 2d 117, 119 (D. Mass.

2001). This procedure provided a mechanism through which federal habeas petitioners could satisfy exhaustion obligations without defaulting on AEDPA's one-year limitations period.

In Rhines, the Supreme Court approved this use of the stay-and-abeyance procedure, see id. at 278, but stipulated that district courts should only resort to it in "limited circumstances," id. at 277. The Court set out three preconditions for the grant of a stay and abeyance to a habeas petitioner. First, the petitioner must show good cause for his failure to have exhausted a particular claim in state court. See id. Second, the petitioner must show that the particular claim is not "plainly meritless." Id. Third, the petitioner must show that he has not engaged in any "abusive litigation tactics or intentional delay" touching upon the prosecution of the claim. Id. at 278.

The erection of this tripartite framework brings us back to the case at hand. The district court appointed counsel for the petitioner and referred both his stay-and-abeyance motion and the respondent's motion to dismiss to a magistrate judge. The petitioner subsequently withdrew six of the eight claims contained in his habeas petition. The petitioner's remaining two claims included his unexhausted ineffective assistance of counsel claim and an exhausted claim.[5] After a hearing, the magistrate judge

---

[5] The exhausted claim is not at issue here, and any discussion of it would be superfluous.

- 10 -

issued a report and recommendation, in which she found all three elements of the Rhines framework satisfied and recommended granting the stay and abeyance and denying the motion to dismiss. Pertinently, she reasoned that the petitioner's time-consuming efforts to secure post-conviction counsel comprised good cause for his failure to exhaust state-court remedies.

The respondent objected, and the district court — on de novo review, see Fed. R. Civ. P. 72(b)(3) — rejected the magistrate judge's recommendation. Although the court acknowledged that Rhines "did not define precisely what constitutes 'good cause'" for a failure to exhaust, it determined that the petitioner had not made the required showing. Sena, 2020 WL 1429849, at *2. In the court's estimation, the considerations cited by the magistrate judge were insufficient to excuse the petitioner's prolonged inaction, particularly in light of evidence that he could competently self-advocate for the merits of his ineffective assistance claim. See id. The court stated:

> [P]roceeding pro se "does not excuse a petitioner from the exhaustion requirement." [Lundy], 455 U.S. at 520 ("Just as pro se petitioners have managed to use the federal habeas machinery, so too should they be able to master this straightforward exhaustion requirement.") . . . . Furthermore, Sena filed a habeas petition pro se in this Court just two days after counsel was appointed to pursue his claims in state court. In that petition, Sena articulated his claim of ineffective assistance of counsel which

- 11 -

> demonstrates that he had both the opportunity and ability to pursue state court collateral relief while awaiting the appointment of counsel. His failure to do so for more than six months while he sought the appointment of counsel does not amount to "good cause" sufficient to excuse compliance with the exhaustion requirement.

Id. The court proceeded to deny the stay-and-abeyance motion and — since the petitioner made no request to continue on his lone exhausted claim, see supra note 4 — dismissed the mixed habeas petition for want of exhaustion. See Sena, 2020 WL 1429849, at *2-3. This timely appeal followed.

## II. ANALYSIS

The district court's decision turned solely on what it determined to be the petitioner's failure to satisfy the good cause element of the Rhines framework,[6] see Sena, 2020 WL 1429849, at *2, and the petitioner's appeal focuses exclusively on that element.

We review the district court's determination that the petitioner failed to show good cause for abuse of discretion. See Rhines, 544 U.S. at 278. Abuse of discretion is not a monolithic standard: "within it, abstract questions of law are reviewed de

---

[6] The district court did not comment on the magistrate judge's recommended finding that the petitioner had not engaged in any abusive litigation tactics or intentional delay. See Sena, 2020 WL 1429849, at *2. The court expressed some skepticism about the recommended finding that the petitioner's ineffective assistance of counsel claim was not plainly meritless, see id., but did not resolve the issue.

novo, findings of raw fact are reviewed for clear error, and judgment calls receive a classically deferential reception." Riva v. Ficco, 615 F.3d 35, 40 (1st Cir. 2010). In the absence of a material error of law — and no such error is evident here — the contours of judicial discretion are "broad — but . . . not absolute." Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988). "Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Id.

Rhines supplies the beacon by which we must steer. Even so, the Court's opinion says little about what circumstances may suffice to excuse a habeas petitioner's failure to exhaust state-court remedies ahead of his federal filing. After Rhines, the Supreme Court has addressed the stay-and-abeyance good cause requirement only once. See Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005). There, the Court stated, in dictum, that even though a petitioner had not acted diligently, "reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for [a petitioner] to file in federal court" for a stay and abeyance. Id.

Other reported cases do not offer much further elucidation. See, e.g., Dixon v. Baker, 847 F.3d 714, 720 (9th

Cir. 2017) ("The caselaw concerning what constitutes 'good cause' under Rhines has not been developed in great detail."); Heleva v. Brooks, 581 F.3d 187, 192 (3rd Cir. 2009) (concluding that "[t]he full range of circumstances in which a habeas petitioner is eligible for stay-and-abeyance is not yet clear"). Our own jurisprudence on the subject is likewise thin. We have held that the strategic omission of claims on direct appeal does not constitute good cause for the failure to exhaust those claims. See Clements v. Maloney, 485 F.3d 158, 170-71 (1st Cir. 2007). So, too, we have held that good cause was not shown when a failure to exhaust resulted from "[i]gnorance of the law." Josselyn v. Dennehy, 475 F.3d 1, 5 (1st Cir. 2007). Importantly, however, Josselyn involved a petitioner who was represented by counsel throughout, and we reserved the issue of how strictly this holding should be applied to pro se petitioners. See id. at 5 n.3; cf. Rhines, 544 U.S. at 279 (Stevens, J., concurring) (warning against construing the good cause requirement so strictly as to "trap the unwary pro se petitioner").

Against this mottled backdrop, we turn to the district court's finding that the petitioner failed to satisfy the good cause requirement. The court placed substantial weight on the lengthy interval during which the petitioner could have filed his Rule 30 motion in the state court, but did not. See Sena, 2020 WL 1429849, at *2. That delay was an appropriate integer in the good

cause calculus: when determining good cause in a variety of contexts, courts typically gauge the scope of the moving party's delay and measure it against that party's window of opportunity within which to act. See, e.g., Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) ("Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend [a complaint] will be denied [for lack of good cause] . . . ."); Gen. Cont. & Trading Co. v. Interpole, Inc., 899 F.2d 109, 112 (1st Cir. 1990) (holding timing of motion relevant to setting aside entry of default for good cause).

In this case, the petitioner made no move to initiate state-court proceedings during the seven-plus months after CPCS notified him that it would not furnish him with representation. The district court reasonably could interpret this extended quiescence as militating against a showing of good cause. After all, a movant's "diligence or lack of diligence" often serves as the "dominant criterion" in a good cause analysis. Miceli v. JetBlue Airways Corp., 914 F.3d 73, 86 (1st Cir. 2019) (citation omitted).

Of course, each case must be evaluated on its own facts, and a movant's delay must be viewed in light of the particular circumstances. See, e.g., Gen. Cont. & Trading Co., 899 F.2d at 112 (disclaiming any "mechanical formula" for determining good cause). Here, for instance, the petitioner asserts that the

district court should have treated his pursuit of appointed counsel as a proxy for diligence. CPCS's recalcitrance, he says, was a delay-creating external circumstance that cannot fairly be attributed to him. See, e.g., Doe v. Jones, 762 F.3d 1174, 1182 (10th Cir. 2014); Jalowiec v. Bradshaw, 657 F.3d 293, 304-05 (6th Cir. 2011). Relatedly, the petitioner says that his former appellate counsel's misleading representation to CPCS exacerbated this external factor.

The petitioner's proposed application of this tenet to his situation misses the mark. The difficulties that the petitioner encountered in his dealings with CPCS, though obviously frustrating, did not negate his ability to file a Rule 30 motion. The petitioner was free to proceed pro se to file his motion, and Massachusetts law makes pellucid that "an indigent defendant has no constitutional entitlement to the assistance of appointed counsel in preparing or presenting a postconviction motion for a new trial." Parker v. Commonwealth, 863 N.E.2d 40, 42 (Mass. 2007).

In sum, the petitioner was bound by the same general set of procedural expectations that apply to litigants represented by counsel. See Lundy, 455 U.S. at 520; see also Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) ("While judges are generally lenient with pro se [habeas petitioners], the Constitution does not require

- 16 -

courts to undertake heroic measures to save pro se litigants from the readily foreseeable consequences of their own inaction.").

This is not to say that the petitioner's pro se status is unimportant. A district court charged with making a good cause determination must factor a habeas petitioner's pro se status, as well as his attributes, skill sets, and circumstances, into its decisional calculus. See Ellison v. Rogers, 484 F.3d 658, 662 (3d Cir. 2007); see also Josselyn, 475 F.3d 1 at 5 n.3.

Because pro se litigants are not fungible, however, each case must be evaluated on its own facts. See SAI v. Transp. Sec. Admin., 843 F.3d 33, 36 (1st Cir. 2016); see also Pruitt v. Mote, 503 F.3d 647, 655 (3rd Cir. 2007). A pro se litigant who has demonstrated a capacity for understanding and articulating the issues may reasonably be extended fewer allowances than a pro se litigant who is hopelessly out of his depth. See Delaney, 264 F.3d at 15; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142-43 (1st Cir. 1987). Consequently, because every pro se litigant is different, the significance of his unrepresented status is necessarily a matter of degree.

In this instance, the period of delay was substantial — and the sheer length of the delay militated against a finding of good cause. See Guzmán-Ruíz v. Hernández-Colón, 406 F.3d 31, 35 (1st Cir. 2005) (describing three-month delay as fatal to claim that good cause existed for failure to file timely opposition to

summary judgment motion). With this in mind, we think that the district court acted within the wide margins of its discretion in determining that the petitioner could — and should — have gone forward with his Rule 30 motion despite his pro se status. Although the petitioner had no control over CPCS's grudging attitude toward the appointment of counsel, nothing impeded him from acting in his own behalf while he was lobbying CPCS to reconsider its initial turn down. Here, moreover, it is critical to the analysis that the district court supportably found that the petitioner was capable of acting to his own behoof at all times after his receipt of CPCS's rejection letter.[7] See Sena, 2020 WL 1429849, at *2.

In this regard, the court attributed great significance to the habeas petition, filed pro se, which competently articulated the petitioner's claims (including his ineffective assistance of counsel claim). This petition, the court concluded, adequately evinced the petitioner's ability "to pursue state court collateral relief while awaiting the appointment of counsel." Id. Such a conclusion was reasonable under the circumstances: placed along

---

[7] Of course, the petitioner actually had a period of roughly thirteen months within which to act between the date that the SJC denied his ALOFAR (December 21, 2017) and the date on which he filed the stay-and-abeyance motion (February 8, 2019). The district court, however, seems to have given less weight to the portion of this period that preceded his receipt of CPCS's rejection letter (which was dated June 18, 2018).

the continuum of pro se submissions, the habeas petition fairly can be described as well-crafted.

If more was needed, the petitioner's complaint to the Board — written shortly after the petitioner received CPCS's rejection letter — similarly reflected his ability to self-advocate. In it, the petitioner lucidly set forth arguments as to how his former attorney "mishandled" various issues, along with an accurate chronology of the events that undergirded his ineffective assistance claim. Further, the letter featured appendices of "case law . . . [and] references to the exact pages from [trial] transcripts to support each issue."

To cinch the matter, the petitioner's initial request to CPCS for the appointment of counsel was for the expressed purpose of filing a Rule 30 motion, and CPCS's June 2018 rejection letter advised the petitioner specifically that he could pursue that motion without an attorney. CPCS's letter ensured that the petitioner knew of his opportunity to proceed pro se. See O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004) (finding no good cause for delay when plaintiffs were "aware of their [procedural] obligation"); cf. Ellison, 484 F.3d at 662 (deeming habeas petitioner not "unwary" when he had been apprised of how to pursue post-conviction relief). From the petitioner's materials, coupled with the length of the delay and the fact that he was no stranger to the criminal justice system, the district

court plausibly could conclude — as it did — that he was capable of proceeding pro se with his Rule 30 motion in a more timely fashion.

The petitioner attempts to undermine the inferences drawn by the district court by characterizing the cause of his delay as "reasonable confusion" about timing. This characterization draws on dictum from Pace, 544 U.S. at 416, but the attempted analogy compares plums to pomegranates. The Pace Court expressed approval (hypothetically) for a stay and abeyance for an imagined habeas petitioner who was "reasonably confus[ed]" about how state courts would apply recently enacted filing prerequisites to an application for post-conviction relief. Id. That is a far cry from the case at hand. The Rule 30 procedure is straightforward and its essentials (including the applicable filing requirements) have remained constant since at least 1979. See Reporter's Notes to Mass. R. Crim. P. 30(a) (delineating 1979 adoption of simplified post-conviction procedure). Nor was there any reason to doubt the applicability of the one-year federal limitations period.

The petitioner also complains that he would have had great difficulty in mounting an ineffective assistance of counsel claim pro se. The district court disagreed, see Sena, 2020 WL 1429849, at *2, and its conclusion appears to be a reasoned choice between plausible alternatives. The petitioner's correspondence

to the Board shows that the petitioner had the ability to describe his former appellate counsel's allegedly deficient performance clearly — and that was the essence of his ineffective assistance claim.

Battling on, the petitioner invokes a provision of Massachusetts law to the effect that any grounds for post-conviction relief not included in a defendant's Rule 30 motion are deemed waived. See Mass. R. Crim. P. 30(c)(2). From this starting point, the petitioner asserts that he risked forfeiting unidentified claims by filing his Rule 30 motion without the benefit of counsel. This assertion is triply flawed. For one thing, it overlooks that, under Massachusetts practice, a Rule 30 motion may be amended and, in any event, the state court may permit the filing of second or successive Rule 30 motions. See id.; Commonwealth v. Ellis, 57 N.E.3d 1000, 1018 (Mass. 2016). For another thing, the expectation established by the Lundy Court, 455 U.S. at 520 — that pro se habeas petitioners must be held accountable for navigating the usual channels of the "federal habeas machinery," including the strict exhaustion requirement — encompasses the reality that some petitioners will have more challenging claims to advance than others.

Third, and finally, the petitioner's assertion proves too much: virtually any pro se litigant can be said to be at increased risk of forfeiture when contrasted with one represented

by counsel.  See Evangelista, 826 F.2d at 143 ("It is rare indeed that veteran counsel . . . cannot train an eagle eye to discern something that could have been done better, or more convincingly, or not at all."); Yeoman v. Pollard, 875 F.3d 832, 836 (7th Cir. 2017).  If "good cause" were to be construed as broadly as the petitioner urges, any habeas petitioner could justifiably delay his filing for as long as he maintained even the faintest hope of retaining counsel.

When all is said and done, the district court's determination that good cause did not exist for the petitioner's delay rests on an assessment that is inherently fact-sensitive. We think that this determination passes muster when viewed through the deferential prism of the standard of review.  For aught that appears, the district court took into account all the proper factors (and no improper factors) when working its decisional calculus.  Although the question is close, we discern no principled basis for second-guessing the district court's determination.

The petitioner has one last shot in his sling.  He says, in effect, that even if the district court considered all the proper factors and no improper ones, it nonetheless seriously misgauged the appropriate balance.  See Indep. Oil & Chem. Workers, 864 F.2d at 929.  In his view, the court should have afforded greater weight to factors such as his pro se status and his blamelessness for the difficulty in securing appointed counsel and

less weight to the length of the delay in moving forward with a Rule 30 motion. Here, however, striking the good cause balance was "susceptible of two rational (though opposite) conclusions." United States v. Myers, 294 F.3d 203, 208 (1st Cir. 2002). In such circumstances, "the tie-breaker often will be the standard of review." Id. This is such a case. Given the evidence of the petitioner's competence, the lack of any impediment to his proceeding pro se in state court, his awareness that a Rule 30 motion had to be filed, and the length of time during which the petitioner eschewed the filing of such a motion, we are not at liberty to superimpose our judgment upon that of the district court.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is


**Affirmed**.