FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JEREMIAH BANKS,

*Petitioner-Appellant*,

v.

KATHLEEN ALLISON,

*Respondent-Appellee*.

No. 22-55512

D.C. No.
5:21-cv-00051-
JWH-JPR

OPINION

Appeal from the United States District Court
for the Central District of California
John W. Holcomb, District Judge, Presiding

Argued and Submitted January 13, 2025
Pasadena, California

Filed June 18, 2025

Before: Ronald M. Gould, Mark J. Bennett, and Kenneth K. Lee, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's denial of Jeremiah Banks's motion for a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), and its dismissal of Banks's 28 U.S.C. § 2254 habeas corpus petition alleging nine claims.

Two of Banks's claims were exhausted, but the remaining seven were unexhausted. When Banks filed his federal petition in January 2021, he moved for a stay and abeyance under *Rhines* so that he could return to state court and exhaust the unexhausted claims. After filing his federal petition, Banks took no action to exhaust his seven unexhausted claims for over a year. In April 2022, the district court denied Banks's motion for a *Rhines* stay because Banks failed to show good cause excusing his post-filing lack of diligence and intentionally delayed the review of his federal petition.

The panel held that a district court does not abuse its discretion by considering a petitioner's diligence in pursuing his state court remedies after he files his federal petition when evaluating good cause under *Rhines*. The panel also held that in exercising sound discretion when evaluating good cause under *Rhines*, the district court must consider a petitioner's diligence (or lack thereof) in pursuing his state court remedies after he files his federal petition.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not err in considering Banks's post-filing diligence in assessing whether he demonstrated good cause for a *Rhines* stay. Banks failed to demonstrate cause excusing his lack of diligence, and the district court did not abuse its discretion by denying Banks's request for a *Rhines* stay and abeyance.

The panel rejected Banks's argument that the district court contravened *Rose v. Lundy*, 455 U.S. 509 (1982), by not offering him the choice of withdrawing his entire mixed habeas petition and instead dismissing his petition without prejudice. The panel explained that Banks did not have such a choice because, as part of the order denying Banks's application for a *Rhines* stay, the district court dismissed Banks's two exhausted claims with prejudice.

---

## COUNSEL

Raj N. Shah (argued), Deputy Federal Public Defender; Cuauhtémoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

Matthew Mulford (argued), Deputy Attorney General; Daniel Rogers, Supervising Deputy Attorney General; Charles C. Ragland, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, San Diego, California; for Respondent-Appellee.

## OPINION

BENNETT, Circuit Judge:

On January 8, 2021, Petitioner Jeremiah Banks, a state prisoner, filed a habeas corpus petition under 28 U.S.C. § 2254 alleging nine claims. Two of his claims were exhausted, but the remaining seven claims were unexhausted. When Banks filed his federal petition, he also moved for a stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), so that he could return to state court and exhaust his seven unexhausted claims. After filing his federal petition, Banks took no action to exhaust his seven unexhausted claims for over a year. On April 26, 2022, the district court denied Banks's motion for a *Rhines* stay because Banks failed to show good cause excusing his post-filing lack of diligence and intentionally delayed the review of his federal petition. We must decide whether, when analyzing good cause under *Rhines*, a district court may take into account a petitioner's lack of diligence after filing his federal habeas petition. We hold that a district court must take post-filing diligence into account and that the district court appropriately did so here. Thus, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2017, Banks was found guilty in California state court of one count of human trafficking of a minor, one count of pimping a minor under 16 years old, and one count of pandering by procuring a minor under 16 years old. The jury found that Banks used force or fear when committing certain of the offenses and that he had a sentence-enhancing prior conviction. In 2018, the California Superior Court sentenced Banks to an aggregate term of 30 years to life.

On January 8, 2021, Banks filed a federal petition for writ of habeas corpus in the United States District Court for the Central District of California.  Banks asserted nine claims: (1) erroneous admission of prior acts evidence; (2) erroneous admission of inadmissible hearsay evidence; (3) use of perjured hearsay testimony; (4) ineffective assistance of counsel; (5) prosecutorial misconduct; (6) failure to adjudicate a motion to set aside preliminary hearing testimony; (7) *Brady* violations; (8) ineffective assistance of appellate counsel on direct appeal; and (9) prejudicial admission of perjured hearsay testimony.

Banks had exhausted his two claims for erroneous admission of prior acts and inadmissible hearsay evidence in California state court by November 2019.  The California Superior Court and California Court of Appeal rejected these claims and the California Supreme Court denied review.  For his other seven claims, Banks filed a state habeas petition raising these challenges, which was rejected by the California Superior Court in October 2020.  But after the Superior Court rejected his claims, Banks failed to appeal its decision to the California Court of Appeal or the California Supreme Court.  In his federal petition, Banks acknowledged that he had not appealed these seven claims.[1]

Along with his federal habeas petition, Banks also filed a motion for a stay and abeyance under *Rhines* in order to

---

[1] The federal petition included the following question: "If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons[.]"  Banks responded: "[S]ubmitted Habeas to Superior Court, where it was denied, in process of con[verting] denial issues for submission to Court of Appeal, and subsequently CA Supreme[] Court."

exhaust his state court remedies and "return to federal court for review of his perfected petition" (quoting *Rhines*, 544 U.S. at 272). Seven days after Banks filed his federal petition and application for a *Rhines* stay, the magistrate judge reminded Banks that "[t]o the extent the Petition includes any unexhausted claims, nothing prevents Petitioner from immediately returning to state court to attempt to exhaust them." Banks nevertheless took no action to exhaust his seven unexhausted claims.

In February 2021, the State moved to dismiss Banks's habeas petition. The State wrote:

> In counsel for the State's view, it is likely that the California Court of Appeal or California Supreme Court may impose one or more procedural bars if presented with Banks's unexhausted claims because they have already been ruled to be untimely. Still, the reviewing courts exercise independence when considering habeas corpus claims.

(citation omitted).

In June 2021, Banks, with the help of another inmate, filed an opposition to the State's motion to dismiss. Banks urged that his "constructively filed request for Stay and Abeyance should be granted so as to allow for the introduction of additional evidence to support Petitioner's habeas claims." Banks claimed in his opposition that he had now filed an appeal to the California Court of Appeal of his seven unexhausted claims and was "awaiting reply." But no such appeal had been filed.

In August 2021, the magistrate judge issued a Report and Recommendation, recommending that "Petitioner's stay motions be denied, [the State]'s motion to dismiss be granted, and this action be dismissed, some claims with prejudice and some without."

As to Banks's two exhausted claims, the magistrate judge recommended that they be dismissed as meritless. As to Banks's seven unexhausted claims, the magistrate judge recommended that the district court deny Banks a *Rhines* stay. The magistrate judge found that "Petitioner has likely shown good cause for his failure to exhaust up to the time he filed his [federal] Petition" due to a lack of representation in his initial-review collateral proceedings before the California Superior Court. But the magistrate judge found Petitioner "ha[d] not adequately explained the subsequent seven-month delay in attempting to exhaust grounds three through nine" through the state appeals process.

The magistrate judge noted that Banks "was aware that [those grounds] were unexhausted when he filed his Petition and that he was required to exhaust them" and that Banks was advised by the court in January 2021 that nothing prevented him from exhausting his claims in state court. In response to the State's motion to dismiss, Banks argued that he waited to exhaust his state court remedies "because he hoped to gather 'additional evidence to support' his claims." But the magistrate judge found that Banks "fail[ed] to explain why he was able to present his claims to [the federal district court] without gathering additional evidence but [was] unable to present those same claims to the California Supreme Court."

The magistrate judge also found that Banks failed to show that ineffective assistance of appellate counsel, even if

present, "impacted his ability to exhaust his state-court remedies." The magistrate judge concluded that this argument was unavailing because:

> [Petitioner] filed a habeas petition in the superior court in September 2020. To date, almost 10 months have passed since the superior court denied that petition, but he has not returned to state court to try to exhaust his claims despite being advised by this Court that he could do so. Nothing that appellate counsel did or did not do has any bearing on Petitioner's most recent dilatory conduct. Thus, he cannot establish the requisite good cause since then for a *Rhines* stay based on his appellate counsel's performance.

The magistrate judge also rejected Banks's arguments that COVID-19 restrictions limited his access to the prison law library because that lack of access did not explain why Banks pursued his federal petition but declined to pursue his state appeal. The magistrate judge concluded that "Petitioner [was] not entitled to a *Rhines* stay because he cannot show good cause for not having earlier exhausted his claims and has engaged in intentionally dilatory tactics."

In April 2022, the district court accepted the findings and recommendations of the magistrate judge, denied Banks's motion for a *Rhines* stay, and dismissed his petition. The district court agreed with the magistrate judge's findings on Banks's two exhausted claims. For Banks's seven unexhausted claims, the district court noted that "[n]one of [Petitioner's] allegations . . . explain why he has failed to exhaust" his other state claims "in the 15 months since filing

the [federal] Petition." The district court observed that even to the date of its order (April 26, 2022), Banks "still [had] not even attempted to exhaust them."[2] The district court reviewed Banks's explanations for his lack of diligence and found them unavailing. The district court denied Banks a *Rhines* stay and dismissed his exhausted claims with prejudice and his unexhausted claims without prejudice.

In December 2022, Banks filed an appeal in the California Court of Appeal of his seven unexhausted claims.[3] Dkt. 18 at Ex. A. The California court held that Banks's claims were all barred as untimely and lacked merit. Dkt. 18 at Ex. B. Banks appealed this decision to the California Supreme Court which summarily denied his petition in April 2023. Dkt. 18 at Ex. D.

We granted a certificate of appealability as to whether the district court abused its discretion in denying Banks a *Rhines* stay. We also granted a certificate of appealability as to whether the district court erred by failing to provide Banks the choice between dismissing without prejudice his mixed habeas petition to pursue state court exhaustion or abandoning his unexhausted claims under *Rose v. Lundy*, 455 U.S. 509 (1982).

---

[2] Although Banks contends that he thought another inmate had filed the appeal of his seven unexhausted claims in June 2021, he was informed by the magistrate judge in August 2021 that this appeal had not been filed. Banks nevertheless did not file an appeal in California state court for his unexhausted claims at any time before the district court's dismissal of the case on April 26, 2022.

[3] This filing postdates the district court's judgment. Banks requests that we take judicial notice of his state court records. Dkt. 18. Because this motion is unopposed and the materials are judicially noticeable, this motion is **GRANTED**. *See* Fed. R. Evid. 201(b).

**JURISDICTION AND STANDARD OF REVIEW**

"We have jurisdiction to review the dismissal of a habeas petition under 28 U.S.C. § 2253(a)." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008). "We review the district court's denial of a stay and abeyance for abuse of discretion." *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014).

**DISCUSSION**

The history and purpose of a *Rhines* stay inform our conclusion that the district court did not abuse its discretion by considering Banks's conduct after he filed his federal habeas petition. In *Rose v. Lundy*, the Supreme Court confronted the issue of mixed habeas petitions: petitions for habeas corpus "that contain[] both exhausted and unexhausted claims." 455 U.S. at 513. The Supreme Court held that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." *Id.* at 522. The Supreme Court explained that "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," *id.* at 518, because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity [for] the state courts to correct a constitutional violation," *id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)). The Supreme Court reasoned that comity "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr*, 339 U.S. at 204).

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA preserved *Lundy*'s total exhaustion requirement, *see* 28 U.S.C. § 2254(b)(1), (b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."), but also imposed a one-year statute of limitations for filing a federal habeas petition, *see id.* § 2244(d)(1). This created a potential timing issue with *Lundy*'s dismissal requirement: "[i]f a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review." *Rhines*, 544 U.S. at 275. "Even a petitioner who files early will have no way of controlling when the district court will resolve the question of exhaustion. Thus, whether a petitioner ever receives federal review of his claims may turn on which district court happens to hear his case." *Id.*

In response to this problem, in *Rhines*, the Supreme Court authorized a stay-and-abeyance procedure for mixed habeas petitions. Recognizing the district courts' equitable ability to issue stays and Congress's enactment of AEDPA "against the backdrop of *Lundy*'s total exhaustion requirement," *id.* at 276, the Supreme Court authorized district courts to toll the one-year limitations period "while a 'properly filed application for State post-conviction or other collateral review' is pending," *id.* (quoting 28 U.S.C. § 2244(d)(2)).

But the Supreme Court recognized that stay and abeyance, "if employed too frequently," "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings"

and "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.* at 277. "For these reasons," the Supreme Court instructed that "stay and abeyance should be available only in *limited circumstances*" and that a "mixed petition should not be stayed indefinitely." *Id*. (emphasis added).

The Supreme Court set out three requirements for a *Rhines* stay. First, "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* Second, a stay is appropriate only if the petitioner's unexhausted claims are not "plainly meritless." *Id.* Third, "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Id.* at 278.

Here, the district court denied Banks's motion for a stay and abeyance because Banks failed to explain why he did not exhaust his state court remedies for more than fifteen months while his federal petition was pending.[4]  The

---

[4] Banks filed his partially unexhausted federal petition on January 8, 2021. Banks acknowledged that some of his claims "were not previously presented to the California Supreme Court" and that he was "in process of con[verting] denial issues for submission to Court of Appeal, and subsequently CA [Supreme] Court."

On January 15, 2021, the magistrate judge advised in an order: "To the extent the Petition includes any unexhausted claims, nothing prevents Petitioner from immediately returning to state court to attempt to exhaust them."

question before us is whether the district court abused its discretion in considering Banks's conduct following the filing of his federal habeas petition in its good cause analysis.**[5]**

We hold that a district court does not abuse its discretion by considering a petitioner's diligence in pursuing his state court remedies after he files his federal petition when evaluating good cause under *Rhines*. We also hold that in exercising sound discretion when evaluating good cause under *Rhines*, the district court must consider a petitioner's diligence (or lack thereof) in pursuing his state court remedies after he files his federal petition.

The objectives of AEDPA and the principles of *Rhines* instruct us that a petitioner's post-filing conduct is relevant

---

In her August 5, 2021 Report and Recommendation, the magistrate judge wrote:

> Despite his assertion otherwise, Petitioner has not filed any habeas petitions concerning his underlying convictions in the state court of appeal or supreme court. *See* Cal. App. Cts. Case Info., http://appellatecases.courtinfo.ca.gov/ (searches for "Jeremiah" with "Banks" in fourth appellate district and supreme court yielding no relevant results) (last visited Aug. 4, 2021).

Banks had still not filed any appeal in California state court before the district court dismissed his federal petition on April 26, 2022.

[5] The magistrate judge found that Banks's delay both undercut his argument for good cause and constituted intentional delay in violation of two *Rhines* requirements. Because we find that Banks does not meet the requirement for good cause under *Rhines*, we do not assess whether his conduct also constituted "abusive litigation tactics or intentional delay." 544 U.S. at 278.

to the good cause analysis.  The equitable nature of a *Rhines* stay supports our holding, because a petitioner's duty to exhaust his state court remedies does not end when he files his federal petition.  Because a *Rhines* stay is meant to be a temporary remedy, the district court should consider a petitioner's post-filing delay in assessing good cause.

The objectives of AEDPA inform us that a petitioner's post-filing diligence is relevant to the *Rhines* good cause analysis.  "Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences," *Woodford v. Garceau*, 538 U.S. 202, 206 (2003), and to "further the principles of comity, finality, and federalism," *Williams v. Taylor*, 529 U.S. 420, 436 (2000).  "A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."  *Lundy*, 455 U.S. at 518–19.  "[I]t would be unseemly" under our federal system for a federal court to reverse a state court conviction without first affording the state court the opportunity to address its error.  *Duncan v. Walker*, 533 U.S. 167, 179 (2001) (quotation marks omitted) (quoting *Lundy*, 455 U.S. at 518).

The Supreme Court has instructed that "in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  *Id.* at 732.

A petitioner who presents a mixed petition has, by definition, not presented some claims to the state courts—

the courts of the first review. The Supreme Court emphasized that a stay and abeyance is meant to be a temporary remedy to cure this problem in accord with AEDPA. But "[a] mixed petition should not be stayed indefinitely." *Rhines*, 544 U.S. at 277. "[T]he district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA," and "district courts should place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 277, 278. Petitioners who fail to pursue their state court remedies after filing their federal petitions contravene these goals and may indefinitely delay the completion of their state and federal appeals. A petitioner's failure to seek state court review after filing a mixed federal petition, thereby acting contrary to the instructions of, and federalism and comity interests inherent in AEDPA, necessarily informs whether a stay and abeyance is appropriate.

"There is no doubt Congress intended AEDPA to advance" "the principles of comity, finality, and federalism." *Williams*, 529 U.S. at 436. AEDPA advanced "the historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts." *Id.* In respect of "this delicate balance," the Supreme Court has "been careful to limit the scope of federal intrusion into state criminal adjudications and to safeguard the States' interest in the integrity of their criminal and collateral proceedings." *Id.* For that reason, "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 437. And "[f]or state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error."

*Id.* This works to "safeguard[] the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh[] and lends finality to state court judgments within a reasonable time," which vindicates AEDPA's goals of federalism and comity. *Day v. McDonough*, 547 U.S. 198, 205–06 (2006) (quoting *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000)).

The principles of equity also support (and indeed command) our holding. A *Rhines* stay is a form of equitable relief. *See Blake*, 745 F.3d at 982 ("The good cause element is the equitable component of the *Rhines* test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court."). The equities of good cause do not, and indeed cannot, end on the day a petitioner files his federal petition. Rather, a petitioner's ongoing failure to exhaust his state court remedies informs whether it would be equitable to dismiss or stay the mixed petition. Nothing in *Rhines* or our precedent indicates that the equities stop once a petitioner files his federal claim. And such a strange rule would directly conflict with the policy goals that underlay the passage of AEDPA.

For example, the Supreme Court has noted "AEDPA's clear purpose to encourage litigants to pursue claims in state court prior to seeking federal collateral review." *Duncan*, 533 U.S. at 181 (citing 28 U.S.C. §§ 2254(b), 2254(e)(2), 2264(a)). And the Supreme Court has also observed that "Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences." *Woodford*, 538 U.S. at 206. Allowing a federal petition to linger while the petitioner fails to act diligently in seeking state relief undermines both purposes.

In other equitable contexts, we consider a party's behavior after an initial filing to assess whether relief is appropriate. For example, Federal Rule of Civil Procedure 16(b) requires parties to show good cause to modify a scheduling order. Fed. R. Civ. P. 16(b)(4). This court has held that parties that fail to seek to amend their complaints by a scheduling order's deadline, despite having the knowledge and need to do so, weighed against a finding of good cause. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000).

And in many other contexts, we consider a party's ongoing behavior in assessing the equities. *See, e.g.*, *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1242 (9th Cir. 2020) (considering a party's conduct after filing a complaint in considering the equities of a nonparty appeal); *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 593–94 (9th Cir. 1985) (finding the application of res judicata was not unfair because the plaintiff could have appealed but failed to take action); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146–47 (9th Cir. 1983) (defining contempt as a party's failure "to take all the reasonable steps within his power to insure compliance with the court's order" (cleaned up) (quoting *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976))); *United States v. Terabelian*, 105 F.4th 1207, 1218 (9th Cir. 2024) (considering a party's conduct after filing an appeal in applying the fugitive-disentitlement doctrine).

Our holding aligns with the opinion of the First Circuit, which is our only sister circuit to have considered a similar issue. In *Sena v. Kenneway*, 997 F.3d 378 (1st Cir. 2021), the petitioner filed a pro se federal habeas petition two days after counsel was appointed to pursue his claims in state

court.  *Id.* at 385.  The district court found that the petitioner lacked good cause excusing his failure to exhaust his state remedies because he had "both the opportunity and ability to pursue state court collateral relief while awaiting the appointment of counsel . . . for more than six months."  *Id.* The First Circuit held that "delay was an appropriate integer in the good cause calculus: when determining good cause in a variety of contexts, courts typically gauge the scope of the moving party's delay and measure it against that party's window of opportunity within which to act."  *Id.* at 386. Because the petitioner made "no move to initiate state-court proceedings during the seven-plus months after [the state] notified him that it would not furnish him with representation," the petitioner failed to show diligence and good cause excusing his failure to exhaust.  *Id.*

Our holding also adheres to our approach for equitably tolling the statute of limitations for habeas petitions.  The Supreme Court emphasized that, even if there was an extraordinary circumstance justifying equitable tolling, a petitioner must still pursue his petition diligently to qualify for equitable tolling.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), Pace contended that extraordinary circumstances tolled the statute of limitations for filing his federal habeas petition because his state court petition was pending.  *Id.* at 418.  The Supreme Court found that even if his state court petition tolled the statute of limitations, Pace was nevertheless ineligible for relief because "he ha[d] not established the requisite diligence."  *Id.*  The Supreme Court emphasized that "petitioner waited years, without any valid justification, to assert" his state court claims and then "sat on them for five more months *after* his [state court] proceedings became final before deciding to seek relief in federal court." *Id.* at 419.  The Supreme Court concluded that "[u]nder long-

established principles, petitioner's lack of diligence precludes equity's operation." *Id.*

In *Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020) (en banc), we found that the Supreme Court "evaluated Pace's diligence in all time periods, including those when he was free from impediments to preparing and filing his habeas petition that had been caused by any extraordinary circumstance." *Id.* at 594. We declined to adopt a rule that the presence of an extraordinary circumstance paused the accrual of the limitations period, regardless of whether the petitioner was diligent in filing his petition after the impediment was removed. *Id.* at 598–99. We justified our opinion because "courts must take a flexible approach in applying equitable principles," *id.* at 590, "AEDPA seeks to eliminate delays in the federal habeas review process," *id.* at 591 (quoting *Holland v. Florida*, 560 U.S. 631, 648 (2010)), and the Supreme Court favors a "flexible, circumstance-specific approach" to equitable tolling, *id.* at 593.

The inherently flexible nature of equitable relief, combined with the purposes of AEDPA of promoting comity with the state courts, the timely execution of state sentences, and the need for finality, support our holding that district courts must consider a party's post-filing diligence (or lack thereof) in assessing good cause for a *Rhines* stay. To hold otherwise would invite parties to endlessly delay resolution of their federal claims by not seeking state court relief and invite piecemeal litigation that AEDPA is designed to protect against.

We do not doubt that a petitioner may fail to exhaust his state court remedies without trying to delay the proceedings. Or that such a failure to exhaust might not be due to a lack of diligence. But that does not inform whether a district

court must look at all relevant facts, *including* a petitioner's post-filing conduct, in order to properly exercise its discretion in deciding whether to grant a *Rhines* stay. And that is the question we answer here—in the affirmative.

Banks argues that "the good cause inquiry is *backward-looking* in nature" because "every single time the Supreme Court mentioned the good cause requirement in *Rhines*, the Court phrased it in the *past* tense, not the present tense." We reject that the Supreme Court's use of past tense signaled that post-filing conduct is off-limits. In *Rhines*, the petitioner filed his state petition after for the district court granted a stay and abeyance for his federal petition. 544 U.S. at 272. It was appropriate for the Supreme Court to use past tense to discuss whether Rhines had good cause excusing his failure to exhaust because his petition had already been filed.

Banks also argues that "even assuming [he] *was* required to show good cause after the filing of his federal petition, the District Court's analysis still does not withstand scrutiny" because Banks's "lack of post-conviction counsel" excused his failure to exhaust.[6] We have held that a petitioner meets the standard for good cause under *Rhines* if he meets the standard for good cause announced in *Martinez v. Ryan*, 566

---

[6] Banks contends that "the State has forfeited any arguments as to the good cause requirement" because it "did not contest that Banks established good cause for his failure to exhaust based on the absence of counsel." We disagree. First, the State cited *Rhines* in its motion to dismiss. *See W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 925 (9th Cir. 2012) (explaining there is "no waiver if the issue was raised, the party took a position, and the district court ruled on it"). Second, most of Banks's delay in exhausting his state court remedies occurred after the State moved to dismiss in February 2021. The State cannot be expected to anticipate Banks's lack of diligence that followed its motion to dismiss.

U.S. 1 (2012). *See Blake*, 745 F.3d at 983–84. *Martinez* provided that deficient counsel or a lack of counsel "in the initial-review collateral proceeding" may provide cause to excuse procedural default. 566 U.S. at 14.

But *Martinez* "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16. We have not addressed whether good cause under *Rhines* extends past the limits of *Martinez* to include instances where a petitioner lacks post-conviction counsel to file an appeal. *See Blake*, 745 F.3d at 983–84 (finding that the good cause standard under *Rhines* "cannot be any more demanding than a showing of cause under *Martinez*"). But we need not address that issue here.

Regardless of a lack of counsel, Banks had full notice that his claims were unexhausted but failed to act. Banks received a copy of the California Superior Court's denial order in November 2020. He did not act to exhaust his state court remedies until December 2022. Dkt. 18 at Ex. A. Banks argues that he thought his fellow inmate had filed his appeal by June 2021, but that argument still fails to explain why Banks did not exhaust his state remedies after the magistrate judge's report and recommendation issued in August 2021 but before the district court ruled in April 2022. Banks knew that some of his claims were unexhausted, but he nevertheless did not act to cure that deficiency. That weighs against good cause even if he was unrepresented in his appeals.

Banks's remaining arguments before the district court also fall short. Banks argued that good cause existed because he suffered a knee injury in June 2019 that affected his daily

functioning, that he was retaliated against by prison officials in December 2019, and that his mail was illegally opened in February 2020.   But as the district court noted, these incidents occurred before Banks filed his federal petition.[7] They cannot excuse his lack of diligence after he filed his federal petition.

Banks also asserts that he has a Test of Adult Basic Education (TABE) score of 8.3, which is equivalent to an eighth-grade education, but he was not found to have physical or developmental disabilities precluding his ability to communicate.[8]  Banks finally contends that the prison's COVID-19 protocols limited his access to the prison library and restricted his communication with his fellow inmate assisting his appeal.  But the prison's COVID-19 restrictions were lifted on March 1, 2021, which means Banks had access to the law library for five months before the magistrate judge's report and recommendation and still failed to exhaust his state court remedies.[9]

---

[7] The district court observed that Banks filed his federal petition on January 8, 2021, and "[n]one of his allegations concerning the purported retaliation or his knee injury explain why he has failed to exhaust grounds three through nine in the 15 months since filing the Petition."

[8] The district court similarly rejected this argument finding that Banks "does not have a mental impairment impacting his ability to communicate."  The district court further concluded that "even if [Banks] could establish a mental impairment, it nevertheless did not affect his ability to exhaust his state-court remedies.  On the contrary, he filed his original Petition, a motion to stay, and an amended motion to stay in this Court despite his TABE score."

[9] The district court similarly observed that Banks "admits that the protocols were lifted or eased on March 1, 2021, and that access to the law library was restored, but he has not even attempted to exhaust his

The district court did not err in considering Banks's post-filing lack of diligence in assessing whether he demonstrated good cause for a *Rhines* stay, and indeed would have erred had it not considered it. Banks did not attempt to exhaust his state court remedies for fifteen months after filing his federal petition despite being informed that some of his claims were unexhausted. Banks failed to demonstrate good cause excusing his lack of diligence.[10] The district court did not abuse its discretion by denying Banks's request for a *Rhines* stay and abeyance.

Banks argues, in the alternative, that "the District Court contravened *Lundy* by failing to offer Banks the choice of withdrawing his entire mixed habeas petition" and instead dismissing his petition without prejudice. We have stated that *Rhines* left the choice under *Lundy* intact, which requires that a district court must "give [the petitioner] the choice of exhausting the unexhausted claim by returning to state court, or abandoning the claim and pursuing the remaining claims in federal court" before dismissal. *Jefferson v. Budge*, 419 F.3d 1013, 1016 (9th Cir. 2005). But Banks did not have such a choice because Banks did not have any exhausted claims left. As part of the same order denying Banks's application for a *Rhines* stay, the district court dismissed Banks's two exhausted claims with prejudice. Banks could not "let the unexhausted claims fall by the wayside" because there were no exhausted claims remaining. *Id.* at 1017.

---

unexhausted claims during the more than nine months since then" (citation omitted).

[10] Because we find that Banks failed to demonstrate good cause, we do not reach the questions of whether his claims are not "plainly meritless" or whether he engaged in "abusive litigation tactics or intentional delay." *Rhines*, 544 U.S. at 277–78.

Because the district court did not abuse its discretion in finding that Banks was not eligible for a *Rhines* stay, the district court did not err in dismissing Banks's habeas petition.

## CONCLUSION

For these reasons, the district court's denial of a *Rhines* stay and dismissal of Banks's habeas petition is **AFFIRMED**.